**SILSBEE HOSPITAL, INC. d/b/a Columbia Silsbee Doctors Hospital, Appellant,**

**v.**

**Lonny GEORGE, Appellee.**

**No. 09–04–368–CV.**

Court of Appeals of Texas, Beaumont.

Submitted on Feb. 24, 2005.

Decided April 28, 2005.

Travis R. Brewer, Law Office of Travis R. Brewer, Austin, Darrin M. Walker, Law Office of Darrin Walker, Kingwood, for appellant.

Curtis W. Leister, John Werner, Reaud, Morgan & Quinn, LLP, Beaumont, for appellee.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

In this case, an employee of a nonsubscriber to workers' compensation insurance voluntarily elected to participate in an employee benefit plan that provided specified benefits in lieu of a common law remedy. The employer, Silsbee Hospital, Inc. d/b/a Columbia Silsbee Doctors Hospital, contends that under the employee benefit plan the employee, Lonny George, waived his common law rights to sue for personal injuries. The Hospital raises additional errors regarding: (1) the trial court's refusal to grant it additional strikes for certain veniremembers it challenged for cause, (2) the trial court's evidentiary rulings to exclude evidence arguably relevant to its affirmative defenses of waiver, release and estoppel, (3) the trial court's broad form damage submission and refusal to submit a damage charge with segregated elements of damage, (4) the jury's arguably excessive damage award, and, (5) the refusal of the trial court to allow it to amend its pleadings to assert the affirmative defense of ratification.

While descending a ladder on February 29, 1996, George was injured when the ladder slipped and he fell. He received multiple fractures of the bones in his foot and, subsequently, had three surgeries as a result of his injuries. A jury awarded George $1,000,000 in his suit against the Hospital. The award consisted of $100,000 for past damages and $900,000 for future damages.

Applying the rules of contract construction, as further discussed below, we hold that the waiver George signed does not expressly apply to relieve the Hospital of its potential liability at common law. We find the trial court erred in failing to grant additional strikes in jury selection. We also find this error was harmful and requires us to reverse and remand.

### The Waiver Agreement

Prior to his injury, George elected to participate in an employee benefit plan and, in doing so, waived certain rights to bring negligence suits for on-the-job injuries. On February 14, 1996, George signed a document titled "ELECTION TO PARTICIPATE IN THE EMPLOYEE HEALTH AND SAFETY PROGRAM BENEFIT PLAN OF COLUMBIA/HCA HEALTHCARE CORPORATION." The document (hereafter referred to as the "waiver agreement") states, in all capital letters, "EXECUTION OF THIS DOCUMENT INVOLVES THE WAIVER AND RELEASE OF VALUABLE LEGAL RIGHTS." The waiver agreement further provides:

By execution of this document, I hereby voluntarily elect to participate in the Employee Health and Safety Program Benefit Plan of Columbia/HCA Healthcare Corporation (the "Plan"). AS REQUIRED BY THE TERMS OF THE PLAN, I, THE UNDERSIGNED, HEREBY FREELY, IRREVOCABLY AND UNCONDITIONALLY RELEASE, WAIVE AND AGREE NOT TO SUE UPON, ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE AGAINST COLUMBIA/HCA HEALTHCARE CORPORATION, ITS SUBSIDIARIES, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS AND EMPLOYEES, THAT ARISE OUT OF OR ARE RELATED TO INJURIES OR DEATH SUSTAINED BY ME IN THE COURSE AND SCOPE OF MY EMPLOYMENT

BY COLUMBIA/HCA HEALTHCARE CORPORATION AND ARE CAUSED BY THE SOLE NEGLIGENCE OF COLUMBIA/HCA HEALTHCARE CORPORATION OR THE NEGLIGENCE OF COLUMBIA/HCA HEALTHCARE CORPORATION CONCURRENT WITH THE NEGLIGENCE OF ANY OTHER PERSON OR ENTITY. . . .

■ The Hospital maintains that by participating in the plan and accepting benefits[1], George waived his right to sue the Hospital. George contends that his injury was sustained in the course and scope of his employment with the Hospital, and not in the course and scope of his employment with Columbia/HCA Healthcare Corporation, the parent corporation of the Hospital. George further contends that under the express terms of the plan he waived only his rights to sue the parent, but retained his rights to sue the Hospital, a subsidiary of Columbia/HCA.

In its first issue, the Hospital asks this Court to reverse the trial court and render judgment in the Hospital's favor. Alternatively, the Hospital seeks reversal and remand. To support its rendition argument based on waiver, the Hospital relies on *Lawrence v. CDB Services, Inc.*, 44 S.W.3d 544, 551–53 (Tex.2001), and *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 191(Tex.2004). In *Lawrence*, the Texas Supreme Court determined that agreements by workers to limit their employers' liability in exchange for non-subscriber benefit plans were not prohibited by law. *Lawrence*, 44 S.W.3d at 551–53(superseded by Tex. Lab.Code Ann. § 406.033(e) (Vernon Supp.2005)) ("Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before

the employee's injury or death is void and unenforceable."). Although superseded by statute, *Lawrence* remains the law for the claims asserted by George, who both signed the waiver agreement and sustained his injury before September 1, 2001. *See Reyes*, 134 S.W.3d at 192.

■ The Texas Supreme Court further determined that employers who enroll employees in non-subscriber benefit plans as allowed by *Lawrence* must satisfy both components of the fair notice requirements, namely, the express negligence doctrine and conspicuousness.[2] *Id.* at 191. When the fair notice requirements apply, a contract must satisfy both requirements to avoid being unenforceable as a matter of law. *Id.* at 192 (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509–10 (Tex.1993), and *U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789, 792 (Tex.App.-Houston [14th Dist.] 1995, writ denied)). The express negligence doctrine requires that the parties' intent to release an employer from liability for its own future negligence "must be expressed in unambiguous terms within the four corners of the release." *Lawrence*, 44 S.W.3d at 553.

Relying on *Victoria Bank*, George maintains the document addresses only his right to pursue claims arising from injuries he received while working as an employee of Columbia/HCA, the parent, and not while working as an employee of the Hospital. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991) (to effectively release a claim the releasing document must "mention" the claim). The pertinent language in the agreement here provides that George released and waived all claims and causes of action, including future ones, that he "may have against

---

**1.** Approximately $78,000 in plan benefits were paid to George as a result of his injuries.

**2.** The conspicuousness requirement is not an issue in this case.

Columbia/HCA Healthcare Corporation [or] its subsidiaries, . . . ." "that arise out of or are related to injuries or death sustained by [George] *in the course and scope of [his] employment by Columbia/HCA Healthcare Corporation* and are caused by the sole negligence of Columbia/HCA Healthcare Corporation or the negligence of Columbia/HCA Healthcare Corporation concurrent with the negligence of any other person or entity." (Emphasis added) While the Hospital concedes that the release and waiver is written in terms of George's being an employee of Columbia/HCA rather than the Hospital, it argues that the summary plan description and surrounding circumstances make clear the intent that the Hospital is included in the term "employer."

■ In our review of the waiver agreement, we utilize the rules of contract construction applicable to indemnity agreements and releases. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex.1998); *see also Fisk Elec. Co. v. Constructors & Associates, Inc.,* 888 S.W.2d 813, 814 (Tex.1994). Under *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex. 1987), the Texas Supreme Court held the express negligence doctrine, a rule of contract construction, requires that "the intent of the parties must be specifically stated within the four corners of the contract." *Id.* at 708; *see also Fisk,* 888 S.W.2d at 814–15. The purpose of the express negligence rule is "to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence." *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724, 726 (Tex.1989). "Either the indemnity agreement is clear and enforceable or it is not." *Fisk,* 888 S.W.2d at 815.

■ In addition to the express negligence rule, we also consider other rules of contract construction in construing nonsubscriber agreements. *See Associated Indem. Corp.,* 964 S.W.2d at 284; *see also Fisk,* 888 S.W.2d at 814. "Deciding whether a contract is ambiguous is a question of law for the court." *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). A contract is unambiguous if it can be given a definite or certain legal meaning. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999).

The agreement George signed is not ambiguous as it can be given a definite legal meaning. The clear and unambiguous language found within the fur corners of the document here addresses only injuries arising out of George's *employment by Columbia/HCA Healthcare Corporation.* It is not disputed that George's injuries arose out of his employment by the Hospital, which, although a subsidiary of Columbia/HCA, is a distinct legal entity under Texas law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 798 (Tex. 2002); *Bell Oil & Gas Co. v. Allied Chem. Corp.,* 431 S.W.2d 336, 339–41 (Tex.1968).

■ The Hospital argues that the agreement it drafted, if interpreted as limited to claims arising out of the employment by Columbia/HCA, would be absurd. However, we note that an employee under Texas law may move into, and out of, his employer/employee relationship with one entity and into an employer/employee relationship with another entity depending upon which entity controls the details of his work at the time of the injury. *See Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 225–26 (Tex.1963)(whether general employees of one employer become borrowed employees of another is often a difficult question). Additionally, a landlord may have potential liability for accidents that occur on premises over

which it has some control. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993) (control over security and safety on leased premises may be fact issue regarding potential liability to tenant's employee injured on leased premises). This is not to say that there was a fact issue here on whether the Hospital or Columbia/HCA controlled George's work, or that Columbia/HCA leased the premises where George suffered his injury, but just to observe that Columbia/HCA, as the parent corporation, might have had its reasons to want a waiver from employees such as George. Thus, we conclude that Columbia/HCA could have an interest, separate and apart from the interest of the Hospital, making a waiver of common law claims against it desirable.

We further note that in the Bill of Exceptions the Hospital presented affidavits of the Risk Manager for Silsbee Hospital, Inc., Alice O'Quin, and the Vice President—Legal & Corporate Secretary for Columbia/HCA Healthcare Corporation, John Franck II. However, there was no testimony from either of them explaining the reason the waiver agreement limited the waiver to injuries arising from employment by Columbia/HCA. We also note there was no testimony from any witness at trial, or testimony offered and excluded by the trial court, explaining why the waiver agreement limited the injuries released to those arising out of employment by Columbia/HCA, and did not expressly extend to include injuries arising out of employment by its subsidiaries. There was no explanation by any of the witnesses establishing who owned the premises where George's accident occurred, who owned the ladder involved in George's accident, or the degree to which Columbia/HCA controlled safety procedures in place on the premises.

The Hospital did introduce a document titled Columbia/HCA "Employee Guide to Health and Safety" containing a section on safety with ladders, indicating there may have been some direction by the parent over the subsidiary regarding ladder safety. Kenny Gibson, the Hospital's maintenance supervisor, testified that management communicated to employees the safety concepts in the Columbia/HCA safety guide prior to the Hospital's promulgating its own safety rules. In summary, based on the record in this case we cannot imply that there would be no purpose in Columbia/HCA's desire to benefit from a waiver.

Therefore, under the facts of this case, and applying the express negligence rule as well as other rules of contract construction to the waiver agreement, we decline to imply that the drafters of the waiver agreement intended to include the Hospital as a party against whom George waived his common law remedies where the waiver agreement does not expressly so provide. Therefore, we decline the Hospital's request that we reverse the trial court's judgment and render judgment in favor of the Hospital. Issue one is overruled.

## Ratification, Release, Waiver and Estoppel

Issues two, three, and seven concern the Hospital's affirmative defenses. In issues two and three, the Hospital complains that the trial court erred in denying its request to admit evidence it contends raises a fact issue regarding its affirmative defenses, namely, waiver, release, and estoppel. In issue seven, the Hospital complains that the trial court erred in refusing the Hospital's requested trial amendment to assert ratification as an affirmative defense.

■ With respect to estoppel, the Hospital argues George's acceptance of payments, totaling $78,167.24, requires the en-

forcement of an agreement (albeit not the one expressly agreed to in the written contract) that George would not sue the Hospital at common law. The Hospital contends that by accepting voluntary payments for medical expenses and lost wages, George ratified the waiver agreement. At the outset, we note that George signed the waiver agreement and never disputed that he was bound by the written terms of the agreement.

Under Texas law, a tortfeasor may voluntarily pay the person it injures, and the payment cannot then be asserted as an admission that the tortfeasor was negligent. *See* Tex.R. Evid. 409. Therefore, the payments to George for medical and lost wages, and George's acceptance of them, do not raise evidence sufficient to prohibit George from enforcing the terms of the written agreement. The only case the Hospital cites, *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325 (Tex.App.-Fort Worth 2003, pet. denied), is not on point. Instead, *Miller* deals with whether a lawyer's client, who refused to pay attorney's fees under a retainer fee agreement, ratified his attorney's engaging in unauthorized acts when, with full knowledge of his attorney's unauthorized acts, the client subsequently accepted the benefits of the attorney's services under the fee agreement. *See Miller*, 142 S.W.3d at 330. Other than citing the case for the general proposition that acceptance of benefits under a contract can, in some circumstances, prohibit a party from disavowing a contract, nowhere does the Hospital explain how *Miller* would apply under the facts and circumstances in this case. No other cases on estoppel are cited.

■ The Hospital also asserts that George ratified the understanding that the Hospital was released. However, the Hospital did not plead its affirmative defense of ratification as required under Rule 94 of the Texas Rules of Civil Procedure. Thus, the Hospital waived its ratification defense. *See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980).

■ In issue seven, the Hospital asserts the trial court erred in not granting leave for the Hospital to amend its pleadings to assert the ratification defense. A trial court's order granting or denying a request for a trial amendment is reviewed under an abuse of discretion standard. *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994). Under Texas Rule of Civil Procedure 66, a trial court is required to freely grant the request unless "(1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face." *Id.* at 658. When the record shows a lack of diligence in bringing the reshaped cause before the court and when the matter pleaded appears to have been known by the party seeking to amend and is not based on any newly discovered facts, the court does not abuse its discretion in refusing to allow the amendment. *See Trailways, Inc. v. Clark*, 794 S.W.2d 479, 492(Tex.App.-Corpus Christi 1990, writ denied).

The Hospital indicates that it argued ratification as a defense in support of its Motion for Summary Judgment when it filed its Supplemental Argument and Authority in Support of Its Motion for Summary Judgment on July 16, 2001. The jury trial in this case did not occur until 2004. It is clear from the record that the Hospital was aware of its contention that George's conduct allegedly resulted in a ratification to waive his claims against the Hospital long before the trial.

■ When the trial court denies leave to file an amended pleading injecting a

new substantive defense, the burden shifts to the party who offered the amended pleading to clearly demonstrate on appeal that the trial court abused its discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). The Hospital contends that its ratification defense was tried by consent, but fails to include any record references showing when such evidence was presented to the jury. Thus, the Hospital failed to clearly demonstrate the trial court abused its discretion in failing to grant the requested trial amendment to assert ratification when the terms agreed to in writing were in fact enforced at trial.[3]

█ With respect to its waiver and release defenses, the Hospital asserts that George had actual knowledge that by executing the waiver he was waiving negligence claims against the Hospital, and argues that George's actual knowledge makes the waiver effective to protect the Hospital. For this proposition, the Hospital relies on Reyes, which states that "if both contracting parties have actual knowledge of the plan's terms, an agreement can be enforced even if the fair notice requirements were not satisfied." *Reyes,* 134 S.W.3d at 192.

As discussed above the Hospital's Bill of Exceptions offered no testimony regarding the Hospital's understanding of the plan's terms; instead it offered only George's testimony about his understanding. The affidavits of Mr. Franck II, and Ms. O'Quin, offered by the Hospital, contain no evidence regarding the Hospital's understanding of how the waiver applied when the injury arose in the course and scope of an injury to a Hospital employee.

We have held that the contract was not ambiguous, and is therefore construed under the "four corners" rule. Although the Hospital attempted to offer George's understanding of the waiver agreement into evidence, and this evidence was excluded, we note that George's testimony of his understanding of the waiver agreement would have injected testimony inconsistent with the express terms of the written agreement in violation of the parol evidence rule, which is a rule of substantive law.

█ When the parties have made an unambiguous written agreement with respect to a particular subject matter, the parol evidence rule prohibits the presentation of extrinsic evidence to vary or contradict the terms of a written instrument. *See Friendswood Development Co. v. McDade + Co.,* 926 S.W.2d 280, 283 (Tex. 1996); *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958); *Muhm v. Davis,* 580 S.W.2d 98, 101 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). No party pled or contends that the written waiver agreement is ambiguous. As a result, it was not error for the trial court to deny the offer of George's understanding of the release and waiver agreement.[4] Issues two, three and seven are overruled.

---

**3.** We observe that, in the trial court and on appeal, George never denied or disputed that he signed the written agreement or that he was bound by its terms. Rather, the dispute at trial and on appeal is whether the waiver George signed protects both the Hospital and Columbia/HCA.

**4.** We further note that *Reyes* is distinguishable from this case. In *Reyes,* the employer contested the application of the fair notice requirements, but also conceded that if the con-

spicuousness requirement applied, then the waiver signed by the employee was inconspicuous. The appellate court remanded the cause for a fact determination of whether the employee had actual knowledge of the terms of the plan. *Reyes,* 134 S.W.3d at 193. *Reyes* did not specifically apply the "actual knowledge" exception to the express negligence requirement. *Id.* at 192–94. Further, as support for applying the actual notice exception, *Reyes* cites *Dresser,* 853 S.W.2d at 505(which

## Error in Jury Selection

In Issue four, the Hospital complains the trial court erred in failing to strike four veniremembers for cause—Ms. Hazleton, Ms. Phillips, Mr. Stevenson, and Mr. Troup. During voir dire, Ms. Hazleton indicated that her feelings about all that Mr. George had been through would cause her to "give him money even in a situation where he did not carry the burden of proof that the Court [asked her] to look at." Ms. Phillips indicated "I would have trouble not giving him money—something, anyway," even if George failed to carry his burden of proof. Mr. Stevenson stated that even if the evidence showed no negligence he would not be able to award no money. Mr. Troup stated that he knew Mr. George and Mr. George's wife, Wendy, and that he did not think that knowing them would cause him to lean either way.

The Hospital's attorney used four of his peremptory strikes on these veniremembers, and used his other two peremptory strikes as well. The Hospital's attorney requested the trial court allow the Hospital four additional strikes, but the trial court denied the request. At that point, the Hospital's attorney made a record that had he been allowed four additional strikes, he would have stricken Mr. Richardson, Ms. Goins, Mr. Anders, and Mr. Dausel. Mr. Richardson, Ms. Goins, Mr. Anders and Mr. Dausel joined six of the other jurors in the issues found against the Hospital, resulting in the trial court's rendering judgment against the Hospital.

The Hospital used all six of its peremptory strikes provided under the rules. Tex.R. Civ. P. 233. There is no requirement that a party identify the reasons the remaining veniremembers that it would have stricken were objectionable. *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 89–91 (Tex. 2005) (not yet released for publication, subject to revision or withdrawal). The Hospital properly preserved error by using its peremptory challenges against veniremembers it requested the trial court strike for cause, exhausting its other peremptory challenges, and notifying the trial court that other veniremembers objectionable to it remained on the jury panel. *Hallett v. Houston Northwest Med. Ctr.*, 689 S.W.2d 888, 890 (Tex.1985).

Because the error was preserved, we analyze the information provided by the four veniremembers the trial court refused to strike for cause to evaluate whether any of the four were disqualified to serve as a matter of law. We consider the entire examination, and not just the answers of these four veniremembers that arguably reflect bias. *Cortez*, 159 S.W.3d 87, 93–94.

Under Texas law, a prospective juror who has a bias or prejudice in favor of or against a party is disqualified to serve on the jury. *See* Tex. Gov't Code Ann. § 62.105(4) (Vernon 1998); *Shepherd v. Ledford*, 962 S.W.2d 28, 34 (Tex.1998) (error in failing to strike a juror who stated she could not be fair to the defendant because of the results of medical treatment

applies "actual notice" to the conspicuousness requirement) and *Dresser* cites *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990)(holding inconspicuous written disclaimer to be unenforceable absent actual knowledge of the disclaimer). The Hospital does not direct us to any case applying the "actual knowledge" exception to avoid an em-

ployee's recovery where the pertinent document fails to comply with the express negligence requirement. And finally, we note that *Reyes* does not overrule *Ethyl*, which established the "four corners" rule. *Reyes*, 134 S.W.3d at 192–94; *Ethyl*, 725 S.W.2d at 707–08.

to her father). On the other hand, an expression of a bias that is subject to more than one interpretation or is uncertain, referred to as equivocal bias, is not a ground for disqualification. *Cortez*, 159 S.W.3d 87, 89–90, 93–94 (no error where veniremember stated he had a bias against lawsuits but he was willing to try to listen and decide it on the law and the evidence); *Goode v. Shoukfeh*, 943 S.W.2d 441, 452 n. 4, 453 (Tex.1997) (no error where veniremember stated that although he leaned a little toward the defendant based upon what he had heard so far that he could make a decision based on the evidence that came from the witness stand).

 The purpose of jury selection is "to provide a jury composed of persons who are not biased or prejudiced. The object is an impartial jury." *Hallett*, 689 S.W.2d at 889. Bias has been defined as "an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality." *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). In *Compton*, the Supreme Court held that a juror's statements that he did not believe in lawsuits, and had not brought a suit as a result of an accident he was in, were insufficient to show bias as a matter of law. *Id.* at 181–82.

In this case, as is true in most trials, many of the jurors expressed their views in response to the lawyers' questions during voir dire. The trial judge heard the responses of the individual veniremembers and the requests of the lawyers, and disqualified a number of veniremembers who expressed bias. In fact, the trial judge struck fourteen of the veniremembers for cause, and we note that the vast majority of these strikes were at the request of the attorney for the Hospital.

 With respect to the veniremembers the trial court refused to strike,

we imply that the trial court ruled that they were not biased or prejudiced. *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex. 1963). We agree the trial court ruled properly in refusing to strike Mr. Troup, who acknowledged that his acquaintance with Mr. and Mrs. George would not play a role in his service as a juror. Mr. Troup was not disqualified as a matter of law. *See Swap Shop*, 365 S.W.2d at 153–54 (defendant's being father-in-law of juror's friend and hunting companion insufficient to show bias as a matter of law when questioning indicated juror would follow court's instructions).

 However, the trial court's rulings and implicit finding of no disqualification regarding the biases expressed by jurors Hazleton, Phillips, and Stevenson are more troublesome. Hazleton and Stevenson indicated without equivocation that they would favor George in this case with an award even if he failed to prove his case. Hazleton stated in voir dire that she *would* give Mr. George money even if plaintiff failed to carry his burden of proof. Stevenson acknowledged that if *at the end* the evidence showed no negligence, he would still not be able to award no money. Hazleton and Stevenson's statements are unequivocal, and there is nothing in the record indicating that either would try to follow the instructions of the trial court.

 Phillips, on the other hand, indicated an equivocal bias regarding awarding money despite George's failure to carry his burden of proof when she acknowledged that she "might have trouble", and then went further and stated that she "*would have trouble* not giving him money—something, anyway." We observe that Phillips's statements, although subjecting her to the trial court's discretion to disqualify her for cause, remain susceptible to the interpretation that although she would have trouble reaching a verdict that awarded no mon-

ey to George, she still had the capacity to follow the instructions and do so if required by the court's instructions. Phillips's statements about having "trouble," although a close question, are not in the same category as the unequivocal statements of Hazleton and Stevenson.

We hold that Hazleton and Stevenson expressed an unequivocal bias in George's favor because both tacitly indicated they would disregard instructions by the trial court on the burden of proof, and there was no indication that they would try to follow the trial court's instructions. The trial court had no discretion to refuse to strike them for cause. *See Shepherd,* 962 S.W.2d at 34. As a result, we hold that it was error for the trial judge to refuse the Hospital's request to strike veniremembers Hazleton and Stevenson for bias. *See* Tex. Gov't Code Ann. § 62.105(4) (Vernon 1998).

With respect to veniremember Phillips, it was within the trial court's discretion to leave her on the jury on the record made of her potential bias in this case. The trial court did not err in denying the Hospital's request to strike her. *See Glenn v. Abrams/Williams Bros.,* 836 S.W.2d 779, 783 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

Our holding under the voir dire conducted in this case is distinguished from those conducted in *Cortez, Goode,* and *Swap Shop* in that the veniremembers in these cases stated they could set their views aside and decide the cases based upon the evidence presented them. No similar inquiry occurred in the voir dire under review here.

 Harm is presumed where other objectionable jurors made the jury by virtue of the failure to strike the disqualified jurors. *Cortez,* 159 S.W.3d 87, 90–91. Harmful error in jury selection requires us to reverse and remand the case for a new trial. *Shepherd,* 962 S.W.2d at 34.

### Damages Submission

In issue five and six, the Hospital complains that the trial court gave the jury a global charge that segregated only the past from the future damages, and failed to segregate certain future damages such as future medical expenses from other future damages such as future pain and suffering. In addition, the Hospital complains that the damage award was excessive. In light of our ruling on issue four, we need not reach issues five or six.[5]

Accordingly, we reverse the trial court's judgment and remand this cause for proceedings consistent with this opinion.

### REVERSED AND REMANDED.

---

**5.** Nevertheless, we note that Texas Rule of Appellate Procedure 44.1(a)(2) allows an appellate court to reverse where the trial court's error "probably prevented the appellant from properly presenting the case to the court of appeals." *Id.* The Texas Pattern Jury Charge states:

Broad-form submission of multiple elements of damages may lead to harmful error if there is a proper objection raising insufficiency of the evidence to support one or more of the elements submitted. *Harris County v. Smith,* 96 S.W.3d 230 (Tex.2002). If there is *any question* about the sufficiency

of the evidence to support one or more of the elements, the Committee recommends that the elements of damages be separately submitted....

Comm. On Pattern Jury Charges, State Bar Of Tex., Texas Pattern Jury Charges–General Negligence PJC 8.2 cmt. (2003) (emphasis added). "[A]sking the jury to record its verdict as to each element of damages when there is doubt as to the legal sufficiency of the evidence will permit the losing party to preserve error without complicating the charge or the jury's deliberations." *Smith,* 96 S.W.3d at 236.