Affirmed and Memorandum Opinion filed July 2, 2009








Affirmed and Memorandum Opinion filed July 2, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00278-CV

_______________

 

FARZAD ASKARI, Appellant

 

V.

 

ENDEVCO, INC., Appellee

                                                                                                                                               


On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 06-34662

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

 

In this
breach of contract case, appellant, Farzad Askari, appeals a take-nothing
judgment in favor of appellee, EnDevCo, Inc.  In three issues, Askari argues
the trial court erred in (1) ruling the contract was unambiguous, (2)
disallowing Askari=s parol evidence to explain the contract, and (3) allowing
EnDevCo to introduce parol evidence.  Because all dispositive issues of law are
settled, we issue this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.








I.  Factual and Procedural Background

On July
11, 2002, Askari executed a consulting agreement with John Adair, then Chief
Executive Officer of EnDevCo=s predecessor, Adair International Oil and Gas.  As of July
11, 2002, Askari had been working for Adair International for almost a year,
but had not been paid.  The agreement contained the following provisions, among
others:

THIS CONSULTING AGREEMENT (the _Plan_) is made the 1st day of August 2001 among
Adair International Oil and Gas, Inc., a Texas Corporation (the _Company_) and Mr.
Farzad Askari, who will execute and deliver this Plan on the date of engagement
by the execution and delivery of the Counterpart Signature Pages which are in
the form as set forth on Exhibit _B_ (the _Consultants_).

WHEREAS, the Board of Directors of the Company has adopted a Consulting
Agreement for compensation to consultants who are natural persons; and

WHEREAS the Board of Directors desires that the total compensation of
this Plan be up to 903,889 shares of common stock, no par value per share, of
the Company; and

WHEREAS, the Company will engage the Consultants to provide services
solely at the request of and subject to the satisfaction of its President, and
will avail itself to the services of Consultants; and

WHEREAS, a general description of the nature of the services to be
performed by the Consultants and the maximum value of such services under this
Plan will be listed in the Counterpart Signature Pages; and

NOW, THEREFORE, in consideration of the mutual covenants and promises
contained herein, it is agreed:

Section 1

Compensation Plan








1.1       Engagement. The Company hereby engages the Consultants
and the Consultants hereby accept such engagement, subject to the written
request of the Company=s President, and agree to perform the services
requested solely by the President of the Company to his satisfaction. The
services to be performed by the Consultants hereunder shall be personally
rendered by the Consultants, and no one acting for or on behalf of the
Consultants, except those persons normally employed by the Consultants in
rendering services to others.

* * *

 

1.3       Term. All services to be performed at
the request of the Company by the Consultant shall be performed no later than
one year from the date hereof, subject to the receipt of the President=s written request to perform such services, at which
time this Plan shall terminate, unless otherwise provided herein.

 

* * *

 

1.5       Invoices for Services. Each of the
Consultants agree to provide the Company, in consideration of the Compensation
Shares, with a written invoice detailing the services duly performed and to be
performed. Such invoice shall be paid by the Company in accordance with Section
1.4 above.  The submission of an invoice for the services performed by each of
the Consultants shall be deemed to be a subscription by the respective Consultants
to purchase Compensation shares at the price outlined in Section 1.4 above . .
. .

 

* * *

 

1.7.      Delivery of Compensation Shares. On submission of an
invoice for services performed by the respective Consultants, and duly verified
to the satisfaction of the Company, one or more stock certificates representing
such Compensation Shares shall be delivered to the respective Consultants . . .
.








Exhibit
B to the agreement contained a table of the AValue of Certain Services Performed@ from August 2001 through June 2002. 
For each of the eleven months, the table listed a salary, a price per share,
and a number of shares.  Notes following the table indicated a salary of $5,000
per month from August 2001 until January 2002, and a salary of $6,000 per month
from February 1, 2002, until ninety days after a July 26, 2002 shareholders= meeting, with forty percent of the
salary taken in stock and sixty percent in cash for each period.  The notes
also indicated the agreement was to terminate ninety days after the July 26,
2002 shareholders= meeting if the company did not have adequate cash flow.

Within
weeks after Askari signed the agreement, a proxy battle occurred, the company=s name was changed to EnDevCo, Inc.,
and Chris Dittmar eventually replaced Adair as Chief Executive Officer.  During
the year preceding the proxy battle, Adair and another company officer were
issuing stock certificates to brokers in Canada, where the stock was sold and
proceeds then deposited in Houston accounts, including a joint account held by
Adair and his secretary.  The new management team fired all employees who had
worked with the Adair team, including Askari.  Askari subsequently sent EnDevCo=s chief operating officer a letter
demanding payment.  A copy of the consulting agreement was attached to the
letter.  Dittmar ultimately decided there was no basis for Askari=s claim.

Askari
sued EnDevCo for breach of the consulting agreement.  He alleged EnDevCo (1)
failed to pay revenue-generated bonuses, (2) failed to allow him to continue to
serve as a consultant, (3) failed to allow him to have promised job duties and
responsibilities, (4) failed to deliver the promised stock ownership, and (5)
failed to pay his earnings.[1]








Trial
was to a jury.  During trial, the court sustained both parties= objections to parol evidence.[2] 
Without objection on cross-examination, EnDevCo elicited Adair=s admission that, between August 2001
and July 2002, Adair authorized a corporate policy under which stock was
issued, certificates sent to Canadian stockbrokers, the stocks sold, and money
deposited into various Houston bank accounts, one of which was a joint account
between Adair and his secretary.[3]  When Askari
objected to a question about whether the shareholders= meeting was the start of Adair=s problems relative to the other
shareholders, the trial court sustained the objection.

Without
objection in closing argument, EnDevCo argued Adair was interested in the
litigation and not a credible witness.  Also without objection, EnDevCo
referred to Adair=s paying huge sums while saying there was no money to pay
Askari and also to Adair=s coming to a deposition at his own expense and waiting in
the hall during trial.

In
response to Question 1, the single breach-of-contract question, the jury found
both Askari and EnDevCo Afail[ed] to comply with the Consulting Agreement of July 11,
2002.@  Having thus answered Ayes,@ to Question 1, the jury was
instructed to answer Question 2, in which it was asked what sum of money would
fairly and reasonably compensate Askari for  his damages, if any, resulting
from EnDevCo=s failure to comply with the agreement.  The  jury answered $49,500 as
the fair market value of stock Askari was entitled to receive.








AOn the basis of the jury=s answers to special issues,@ the trial court concluded EnDevCo
had Ano liability for the claims made the
basis of [the] suit@ and rendered judgment Askari take nothing.  Askari filed a
Motion for New Trial.  He asserted, contrary to the trial court=s ruling, that the contract was
ambiguous and  parol evidence should have been admitted to show the conditions
prescribed in the agreement did not apply to the work already performed as
denoted in Exhibit AB@ of the agreement.  Alternatively, Askari argued the evidence
conclusively established that he did not breach the contract and that EnDevCo=s counsel engaged in improper jury
argument.  Following a hearing, the trial court denied Askari=s motion.

II.  Discussion

A.        Issues One and Two: Whether the Consulting
Agreement was Ambiguous, thus Warranting Admission of Parol Evidence

 

In issue
one, Askari argues the consulting agreement was ambiguous as a matter of law. 
In issue two, Askari argues the trial court=s disallowance of parol evidence was
therefore reversible error.

Courts
will enforce an unambiguous contract as written and will not receive parol
evidence for the purpose of creating an ambiguity to give the contract meaning
different from that which its language imports.  Sacks v. Haden, 266
S.W.3d 447, 450 (Tex. 2008) (per curiam).  A court may consider the parties= interpretation and A>admit extraneous evidence to
determine the true meaning of the instrument=@ only when a contract is ambiguous.  Id.
(quoting Nat=l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)
(per curiam)). A>Whether a contract is ambiguous is a
question of law that must be decided by examining the contract as a whole in
light of the circumstances present when the contract was entered.=@ Id. at 451 (quoting Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996)).








A
contract is not ambiguous if a court can give the contract a definite or
certain meaning as a matter of law.  Columbia Gas, 940 S.W.2d at 589. 
Nevertheless, if after application of the pertinent rules of construction, the
contract is subject to two or more reasonable interpretations, the contract is
ambiguous, and a fact issue exists regarding the parties= intent.  Id.  An ambiguity
does not arise, however, simply because the contract lacks clarity or the
parties advance conflicting interpretations of the contract. Universal
Health Servs., Inc. v. Renaissance Women=s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003). 
For an ambiguity to exist, both interpretations must be reasonable.  Columbia
Gas, 940 S.W.2d at 589.  It is for the court to decide whether there is
more than one reasonable interpretation of a contract, thereby creating a fact
issue concerning the parties= intent.  Id.

Finally,
an ambiguity in a contract may be patent or latent.  Nat=l Union, 907 S.W.2d at 520.  A patent
ambiguity is evident on the face of the contract.  Id.  In contrast, a
latent ambiguity arises when a contract that is unambiguous on its face is
applied to the subject matter with which it deals and an ambiguity appears by
reason of some collateral matter.  Id.  If a latent ambiguity arises
from this application, parol evidence is admissible for the purpose of
ascertaining the true intention of the parties as expressed in the agreement.  Id.

Askari
argues a latent ambiguity exists when one compares the conditions in Section 1
of the agreement with the contents of the attached Exhibit B.  He contends Athis case is about money and stock
already owed,@ and argues the agreement merely memorializes his compensation for work
already done as reflected by the August 1, 2001 date the agreement was Amade@ (set forth in the introductory
paragraph of the agreement) and the AValue of Certain Services Performed@ from August 2001 through June 2002
(set forth in Exhibit B).  Additionally, Askari argues it is unreasonable to
interpret the agreement as requiring him retroactively to satisfy the
conditions precedent, i.e., receipt of approval and provision of invoices, for
work already performed.








The
agreement, however, refers to consultants= providing  Aa written invoice detailing the
services duly performed and to be performed@ (emphasis added).  Thus, the
agreement requires invoices not only for future, but also past, services C services for which Exhibit B simply
provides a value.  There is nothing unreasonable in reading the agreement and
Exhibit B together as requiring Askari to provide, if he had not already done
so, invoices for work done from August 2001 through June 2002.  There is also
nothing unreasonable about reading the agreement and Exhibit B together to
require retroactive approval for work already  performed before the company
would compensate Askari in the amounts listed in Exhibit B.  Accordingly, we
conclude the agreement is not ambiguous.  Askari=s first issue is overruled. 

Having
concluded the agreement is not ambiguous, we therefore conclude the trial court
did not err in excluding parol evidence.[4] 
Askari=s second issue is overruled.

B.  Issue Three: 
EnDevCo=s AParol@ Evidence and Closing Argument

In issue
three, Askari contends the trial court Acommitted reversible error@ when it allowed EnDevCo to introduce
Aparol evidence.@  Specifically, Askari complains that
Athe Court let the jury hear numerous
accusations of fraud by former CEO John Adair and arguments regarding the proxy
battle that occurred before and during the execution of the contract.@  He complains the arguments unfairly
discredited Adair as a witness.

Askari
cites this court to only three places in the record where the purportedly
improper evidence was received or arguments occurred.  Askari first cites
EnDevCo=s cross-examination of Adair about
whether he was creating stock in the company, sending certificates to Canadian
stockbrokers who sold the stock, and arranging for the sales proceeds to be
deposited in his accounts.  Askari did not object to a question that elicited
Adair=s admission he had engaged in such
action.  The trial court sustained two of Askari=s objections and instructed the jury
to disregard the answer to the question that was the subject of the second
objection.  Askari did not request further relief.[5] 
The court overruled only one of Askari=s objections during this line of
questioning, and Askari did not provide a ground for that objection.








Askari
next cites questions about the timing of Adair=s proxy problems with the company. 
Askari objected once on the ground the question violated the motion in limine
and related to parol evidence.  The trial court sustained the objection. 
Again, Askari did not request further relief.

Finally,
Askari cites EnDevCo=s argument regarding Adair=s alleged interest in the outcome of
the litigation.  Askari did not object to the argument.

By
failing to object, and by objecting but providing no ground for the objection,
or by not requesting further relief when the court sustained his objections,
Askari has not preserved the errors of which he complains in issue three.  See
Tex. R. Evid. 103(a)(1) (AError may not be predicated upon a ruling which admits . . .
evidence unless . . . a timely objection or motion to strike appears of record,
stating the specific ground of objection, if the specific ground was not
apparent from the context.@); Tex. R. App. P. 33.1 (stating, as prerequisite to
presenting complaint for appellate review, record must show complaint was made
to trial court by timely request, objection, or motion that stated grounds for
ruling that complaining party sought from trial court with sufficient
specificity to make trial court aware of complaint, unless the specific grounds
were apparent from context); One Call Sys., Inc. v. Houston Lighting &
Power, 936 S.W.2d 673, 677 (Tex. App.CHouston [14th Dist] 1996, writ
denied) (holding plaintiff waived its objection to inadmissible testimony by
failing to request further relief after trial court sustained its objection).

Nevertheless,
even if Askari can be said to have preserved the issue he presents on appeal,
the issue is without merit.  To the extent Askari is contending the cited
evidence and argument were improper under the parol evidence rule, he
misapprehends the application of that rule.








When
parties have made an unambiguous written agreement with respect to a particular
subject matter, the parol evidence rule prohibits the presentation of extrinsic
evidence to vary or contradict the terms of a written instrument.  Silsbee
Hosp., Inc. v. George, 163 S.W.3d 284, 293 (Tex. App.CBeaumont 2005, pet. denied) (citing Friendswood
Dev. Co. v. McDade + Co., 926 S.W.2d 280, 283 (Tex. 1996)).  EnDevCo=s evidence and argument of which
Askari complains, however, were not directed at the meaning of the agreement. 
Instead, they were directed at impeaching Adair=s character and showing his bias as a
witness.  Askari concedes as much, alleging, AThese improper arguments unfairly
discredited John Adair as a witness.@  Thus, Askari=s third issue also fails on the
merits.

Accordingly,
we overrule Askari=s third issue.

III.  Conclusion

Having
overruled Askari=s three issues, we affirm the judgment of the trial court.

 

 

 

 

/s/        Charles W. Seymore

Justice

 

 

 

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan.









[1]  Additionally, Askari claimed EnDevCo breached the
consulting agreement by terminating him on or about August 30, 2002, and also
sued for specific performance and quantum meruit.  He did not pursue these
claims at trial.





[2]  The trial court=s
determination the consulting agreement was unambiguous is not part of the
record.  Nevertheless, the trial court repeatedly upheld both parties= objections on parol evidence grounds.  In an
unreported conference prior to jury selection, the trial court heard motions in
limine.  At one point when Askari=s
counsel objected to parol evidence, he stated, AThis violates our Motion in Limine.  It also goes to parol evidence.@  It is possible, therefore, the court announced its decision
on parol evidence in the unreported conference on the motions in limine.  In
its brief, EnDevCo states,

 

In a supplemental pleading, Mr. Askari also requested
the court to analyze Athe four corners of the contract@ to determine whether there was a Apatent or latent ambiguity with regard to the
conditions precedent set forth in the contract.@  Mr. Askari alleged that A[a]
reasonable interpretation of the [c]ontract would not apply conditions
precedent to work [he] has already performed prior to the execution of the
contract and acknowledged [therein].@

 

(citations omitted).  EnDevCo cites to a second
supplemental clerk=s record, which is not part of the record on appeal.





[3]  Askari had unsuccessfully objected to a question
about whether Adair was issuing stock to himself on an ongoing and regular
basis, but Adair=s answer was not completely responsive to the
question.  During this line of questioning, there were two unreported bench
conferences.





[4]  We also note the appellate record does not indicate
that Askari presented an offer of proof or bill of exceptions relative to the
excluded evidence.  See Tex. R. Evid. 103(a)(2) (regarding preservation
of error related to ruling excluding evidence).





[5]  Askari filed a motion for mistrial approximately one
month after the trial ended.