NO. 07-01-0200-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 7, 2003
_____

IN THE MATTER OF THE MARRIAGE OF
ALTA MAE SCOTT AND JOHN THOMAS SCOTT
_____

FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,458; HON. JOHN LAGRONE, PRESIDING
_____

Before JOHNSON, C.J., QUINN, J., and BOYD, S.J.[1]

**OPINION**

John Thomas Scott (John) appeals from a final divorce decree which ended his 53 year marriage to Alta Mae Scott (Alta) and divided the community property. The four issues before us fall within two general categories. The first involves the legal and factual sufficiency of the evidence underlying the trial court's decision to grant the divorce and divide the marital estate. The second concerns the ability of the trial court to award title to realty to one who is not a party to the action. We affirm in part and reverse and remand in part.

***Issue One — Sufficiency of the Evidence Underlying the Grounds for Divorce***

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

John initially contends that the evidence underlying the trial court's decision to grant the divorce was both legally and factually insufficient. We disagree.

Alta petitioned for divorce on the grounds that the marriage had become insupportable due to discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation. *See* TEX. FAM. CODE ANN. §6.001 (Vernon 1998). Though she did not personally testify at trial, the record nonetheless contains evidence indicating that 1) the Scotts had not slept in the same bedroom for approximately 22 years or lived under the same roof for one and one-half years prior to the final hearing, 2) Alta had changed her lifestyle, 3) Alta had attempted to run John off of the road with a vehicle, 4) John believed Alta was undermining his business, and 5) John wanted to "get rid of this deal." This is more than ample evidence upon which the trial court could have determined that the marital relationship has been impeded, that discord and conflict of personalities existed, and that the marital relationship had ended without reasonable expectation of reconciliation. *See Baxla v. Baxla*, 522 S.W.2d 736, 739 (Tex. Civ. App.–Dallas 1975, no writ) (holding evidence that indicated one spouse threatened to kill the other and attempts at reconciliation went for naught evinced that the marital relationship had become insupportable).

As stated in precedent, whether the evidence is sufficient to establish insupportability is left to the discretion of the trial court when the divorce is tried by the court. *Id.* at 738-39; *Cusack v. Cusack*, 491 S.W.2d 714, 720 (Tex. Civ. App.–Corpus Christi 1973, writ dism'd w.o.j.). We conclude that the trial court did not abuse its discretion when it held that the marital relationship between the Scotts had become insupportable.

### *Issue Two — Award to J & J Panhandle Construction, Inc.*

Next, John asserts that the trial court erred when it awarded title to several parcels of realty to J & J Panhandle Construction, Inc. (J & J) even though J & J was not a party to the divorce proceeding. We overrule the point.

The property in question (various tracts totaling 40 acres) was transferred by an entity known as Riata to John and Alta. At the time of the transfer, Riata owed J & J for work that J & J had performed for it. And, to satisfy the outstanding debt due J & J, Riata transferred the realty to Alta and John, the latter being a director and the president of the corporation. Thereafter, John's son, James, intervened in the divorce proceeding. He did so alleging that he, like his father, was a shareholder of J & J and that John had "engaged in fraudulent or dishonest conduct . . . in that he breached his fiduciary duty to the Corporation by using corporate funds to acquire property in his personal name" and that "he has failed to reveal to other directors and officers pertinent facts adverse to corporate interests . . . ." Thereafter, he prayed for damages, the removal of John as a director of J & J, interest, costs, attorney's fees, and "such other relief which the Intervenor may be entitled." Though John answered the petition, he did so by general denial. No special exceptions were included in the pleading.

James' petition can be reasonably interpreted as being in the nature of a shareholder's derivative suit. That is, he, as a shareholder of J & J, initiated suit on behalf of the corporation to recover upon claims of the corporation against its president. And, though the petition may have omitted various pleading requirements mandated by statute, *see Edlund v. Bounds,* 842 S.W.2d 719, 728-29 (Tex. App.–Dallas 1992, no writ) (holding that the shareholder must allege in his pleading that he made demand upon the corporate

officers to prosecute the action and they refused or explain why no such demand was made), no one specially excepted to their absence. Thus, they were waived.

Similarly waived was any complaint about James failing to join J & J as a party to the suit. While the corporation was a necessary or indispensable party to the proceeding, *see DeBoard v. Cicle Y Of Yoakum, Inc.*, 951 S.W.2d 127, 134 (Tex. App.–Corpus Christi 1997), *rev'd on other grounds,* 967 S.W.2d 352 (Tex. 1998) (holding it an indispensable party to a shareholders derivative suit); *Providential Inv. Corp v. Dibrell*, 320 S.W.2d 415, 418 (Tex. Civ. App.–Houston 1959, no writ) (holding it a necessary party to such a suit), no one objected to its absence below. Thus, the defect was waived. *See Puryear v. Red River Authority*, 383 S.W.2d 818, 821 (Tex. Civ. App.–Amarillo 1964, writ ref'd n.r.e.) (holding that in the absence of a plea of non-joinder of necessary parties, the appellate court was not authorized to reverse the trial court's judgment because of the lack of a necessary party); *Cox v. Johnson*, 638 S.W.2d 867, 68 (Tex. 1982) (holding that the failure to join an indispensable party generally is not fundamental error because seldom will the absence of an indispensable party deprive the trial court of jurisdiction to adjudicate between the parties already joined).

Finally, a reading of the record discloses ample evidence upon which the factfinder could have reasonably decided that the realty actually belonged to J & J. Again, Riata owed the corporation a debt. Thus, the receivable belonged to J & J, not John, its president and a shareholder. Moreover, the conveyance occurred in satisfaction of the debt owed to J & J, according to John's own testimony. It is well settled that when one party pays the purchase price of realty (that price being satisfaction of the debt due J & J at bar) but title is placed in the name of another, a purchase money resulting trust will arise

4

in favor of the entity providing the purchase money. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984). There existing evidence illustrating that such a trust arose here, the trial court did not err in vesting J & J with title to the land.

### *Issue Three — Sale of Horses Below Fair Market Value*

Next, John attacks the legal and factual sufficiency of the evidence underlying the trial court's finding number VIII. In the latter, the trial court stated that on

> December 7, 1999, [it] ordered the eleven horses belonging to the parties to be sold and the proceeds paid into the registry of the Court. John . . ., without consulting [Alta], sold the horses at a private sale for $3,100, an amount below their fair market value, with intent to reacquire said horses after the divorce was final.

However, John neither argues nor attempts to illustrate the effect, if any, that the court's finding had upon the judgment ultimately rendered. This is of import since the burden lay with him to establish on appeal that the purported error caused the rendition of an improper judgment. *In re M.S.*, No. 02-0509, 2003 WL 21512654 (Tex. July 3, 2003); *Crescendo Inv., Inc. v. Brice*, 61 S.W.3d 465, 477 (Tex. App.–San Antonio 2001, pet. denied). Consequently, we may not reverse the judgment of the trial court (assuming that the error of which he complains was indeed error). *See* TEX. R. APP. P. 44.1(a) (stating that no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals); *Goode v. Shoukfeh*, 915 S.W.2d 666, 673 (Tex. App.–Amarillo 1996), *affirmed*, 943 S.W.2d 441 (Tex. 1997) (overruling the point of error since the appellant did not claim or attempt to show that he was harmed by the purported error).

5

### *Issue Four – Valuation and Division of Property*

Through his last issue, John attacks the trial court's distribution of the marital estate. He does so by first contending that the trial court erred in valuing two separate tracts of land. Then, he questions the sufficiency of the evidence underlying the trial court's finding that the personalty awarded to each litigant was substantially equal. We sustain the issue.

Statute obligates the trial court to divide the marital estate, upon the divorce of the parties, "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. §7.001 (Vernon 1998). This provision does not obligate the court to divide the property equally. *Tate v. Tate*, 55 S.W.3d 1, 10 (Tex. App.–El Paso 2000, no pet.). Indeed, it has long been held that trial courts have great discretion in determining how to divide the estate, and we cannot interfere with that decision unless and until it is shown that its discretion was abused. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). With this said, we turn to the contentions before us.

As to the valuation of the two tracts of land, the first parcel consists of five acres located in Hutchinson County. On it sits a three bedroom 1700 square foot house in average condition, a detached two car garage, another detached garage, three storage buildings, a metal shop, two horse stables with a pipe fence corral, one water well, a windmill, several chicken coops, and other improvements. The trial court valued the property at $35,610. This was the very same value placed upon it by Alta in her verified inventory and appraisement, which document was received into evidence. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 671 (Tex. App.–Houston [1st Dist.] 1993, no writ) (holding that the trial court could rely upon the contents of a sworn inventory when arriving at its

6

conclusions of law); *Bailey County Appraisal Dist. v. Smallwood*, 848 S.W.2d 822, 824 (Tex. App.–Amarillo 1993, no writ) (stating that an owner is qualified to testify about the market value of his property). Furthermore, she represents (through her brief and verified inventory and appraisement) that the $35,610 figure was the valuation assigned to the parcel by the Hutchinson County Appraisal District in 1997 (three years prior to trial). Thus, some evidence appears of record supporting the trial court's valuation of the property.

Yet, also of record is other evidence concerning the value of the tract. For instance, Alta tendered an appraisal wherein the appraiser opined that the realty had a market value of $80,000. He based his opinion upon comparable sales in the area. Next, a local real estate agent represented that based on his inspection of the home and improvements, "we could list [the] home for sale at an asking price of $125,000 and could probably get an offer somewhere in that price range." Additionally, John valued the parcel from $125,000 to $150,000. As can be seen, this other evidence, including that of Alta's own appraiser, valued the parcel at a sum far greater than that assigned by the local appraisal district three years before trial. More importantly, authority has long recognized that "values reflected by the tax rolls do not reflect actual value." *Housing Authority v. Brown*, 256 S.W.2d 656, 659 (Tex. Civ. App.–Dallas 1953, no writ). Given *Brown*, Alta's apparent reliance on the local tax rolls when valuing the tract in her inventory and appraisement, the trial court's obvious reliance on Alta's opinion, and the other evidence illustrating a value at least twice as much as the dated valuation assigned the land by local tax rolls, we conclude that the valuation placed on the land by the trial court is so against the great

7

weight and preponderance of the evidence as to make the valuation clearly wrong or manifestly unjust.

In short, the evidence underlying the valuation is factually insufficient. Therefore, the finding is erroneous. So too is it harmful. For instance, in addition to awarding the tract to Alta, the trial court also entered a $12,000 judgment against John and in favor of Alta "[f]or the purpose of a just and right division of property." Obviously, revaluation of the five acre parcel would materially affect the sum, if any, John is obligated to pay Alta to gain a just and right division of their estate. So, the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1). And, because it did, we must remand the entire community estate for a new division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985) (holding that where error in part of the division of the marital estate materially affects the trial court's just and right division of the entire estate, the reviewing court must remand the entire community estate for a new division); *In re Taylor*, 992 S.W.2d 616, 621 (Tex. App.–Texarkana 1999, no pet.) (holding the same).

Having sustained that portion of issue four involving valuation of the five acre tract, we need not consider the other aspects of the issue. Accordingly, we reverse that part of the trial court's judgment that divides the community estate of John and Alta Scott and remand the cause for further proceedings. In all other aspects, the judgment of the trial court is affirmed.

Per Curiam

8