IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00181-CV

 

In the
Matter of the Marriage of

Melissa
June Wellington

and
Craig Matthew Wellington,

 

 

 



From the County Court at Law No.
2

Brazos County, Texas

Trial Court No. 06-000548-CVD-CCL2

 



MEMORANDUM  Opinion



 

            Melissa and Craig Wellington were
married in August of 2003 and separated in February of 2006.  No child was born
during the marriage and none were adopted.  Melissa filed a suit for divorce on
March 3, 2006.  The parties entered into a Settlement Agreement concerning the
property issues.  The agreement specifically reserved to Craig the right to
contest the granting of a divorce, required Melissa to participate in
counseling sessions with a counselor of Craig’s choosing, and provided for the
future care of two cats owned by the couple.

After attempts to reconcile failed, the trial
court held a hearing on November 13, 2006, at which both parties testified. 
Melissa testified that the marriage was insupportable because of discord or
conflict of personalities between the spouses that destroyed the legitimate
ends of the marriage and that there was no reasonable expectation of
reconciliation.  She acknowledged that Craig opposed the divorce.  Craig
testified that he had signed the Settlement Agreement and thought it was fair
and equitable.  He said that in his opinion there were no irreconcilable
differences that could not be addressed through counseling.

            The attorneys for the parties did not
agree on the form of the decree, and Melissa asked the trial court to proceed
to judgment.  Both parties appeared at the second hearing with counsel, and
after the trial court heard arguments, a decree of divorce based on the
November hearing and the settlement agreement was signed.  Craig filed a motion
for a new trial, which was overruled by operation of law.  Craig also filed a
notice of appeal.  Findings of fact and conclusions of law were not requested.

            Two issues are presented:  (1) whether
the proof of the statutory elements for a no-fault divorce are so lacking in
legally sufficient evidence or, alternatively, factually sufficient evidence as
to render the trial court’s decision an abuse of discretion; and (2) whether
the trial judge failed to reconcile the competing objectives of supporting the
institution of marriage and allowing persons to divorce without assigning
fault.  Because we find that the issues have no merit, we will affirm the
judgment.

            Whether evidence is sufficient to
support a decree of divorce on grounds of insupportability is a matter within
the trial court’s discretion.  In re Marriage of Scott, 117 S.W.3d 580, 582
(Tex. App.—Amarillo 2003, no pet.).   When the standard of review on appeal is
whether the trial court abused its discretion, legal and factual sufficiency
questions are factors to consider in applying the standard, rather than
independent grounds for review.  Yarbrough v. Yarbrough, 151 S.W.3d 687,
690 (Tex. App.—Waco 2004, no pet.); Walston v. Walston, 971 S.W.2d 687,
691 (Tex. App.—Waco 1998, pet. denied).

            The insupportability ground of divorce
is set out in section 6.001 of the Family Code.  This ground, also known as
no-fault divorce, has three elements.  Cusack v. Cusack, 491 S.W.2d 714,
716 (Tex. Civ. App.—Corpus Christi 1973, writ dism'd w.o.j.) (discussing
previous codification as section 3.001 of the former Family Code).  They are: 1)
that the marriage has become insupportable because of discord or conflict, 2)
that discord or conflict destroys the legitimate ends of the marriage, and 3)
there is no reasonable expectation of reconciliation.  Tex. Fam. Code Ann. § 6.001 (Vernon 2006).   The party
petitioning for a divorce on these grounds has a duty to establish the
statutory elements with adequate evidence.  In re Marriage of Richards,
991 S.W.2d 32, 37 (Tex. App.—Amarillo 1999, pet. dism’d).

            In 2003, the Dallas Court of Appeals,
reviewing the denial of a temporary injunction, held that a wife’s testimony
that her marriage was irreparable due to discord and a conflict of
personalities between her and her husband, together with her testimony that
there was no chance for reconciliation, established a prima facie case for a
no-fault divorce under section 6.001.  In re Marriage of Beach, 97
S.W.3d 706, 708 (Tex. App.—Dallas 2003, no pet.).  The Court also rejected the
husband’s assertion that a wife has a duty to reconcile.  Id.
(“assertion that a spouse has a legal duty to reconcile is utterly without
merit”).

            Craig asserts that Melissa’s one-word
responses (“yes” or “no”) to her attorney’s questions do not create a record
that reveals sufficient facts upon which the trial court could have rationally
exercised its discretion.  See Landon v. Jean-Paul Budinger, Inc., 724
S.W.2d 931, 938 (Tex. App.—Austin 1987, no writ) (extensive discussion of abuse
of discretion standard).  He phrases the issue as: “are Melissa’s responses
adequate evidence in the face of Craig’s controverting testimony?”

            Very few recent cases discuss section
6.001 of the Family Code.  The trial court heard Melissa’s testimony affirming
the three elements of the grounds for divorce known as insupportability,
without any objection as to the form of the questions, heard Craig’s testimony
concerning his belief that reconciliation was possible, and heard evidence
concerning attempts to reconcile through counseling.  As the trier of fact, the
court was in a position to observe the demeanor of each of the parties and
assess the weight that should be given their respective testimonies.  Based on
the evidence, we cannot say that the trial court abused its discretion in
granting Melissa’s request for a divorce.  See Cusack, 491 S.W.2d at
717.  The Corpus Christi Court observed about the predecessor statute:

We conclude that it was the intent of the
Legislature to make a decree of divorce mandatory when a party to the marriage
alleges insupportability and the conditions of the statute are met, regardless
of who is at fault, on the theory that society will be better served by
terminating marriages which have ceased to exist in fact.  The courts have no
right or prerogative to add to or take from such a legislative enactment, or to
construe it in such a way as to make it meaningless.  As we view the Code, when
insupportability is relied on as a ground for divorce by the complaining
spouse, if that ground is established by the evidence, a divorce must be
granted the complaining party, without regard as to whether either, both or
neither of the parties are responsible for or caused the insupportability. 
[Citation omitted.]  It is not incumbent upon the plaintiff who brings the
divorce action upon the ground of insupportability to show any misconduct on
the part of the defendant, but it is only incumbent upon that spouse to
establish by the evidence that a state of insupportability exists regardless of
whether it is anyone's or no one's fault.

 

Id.; see
also Renfro v. Renfro, 497 S.W.2d 807, 808 (Tex. Civ. App.—Waco 1973, no
writ) (citing Cusack).  We overrule Craig’s first issue.

            Craig’s second issue is essentially a
re-urging of his first: “The two state interests (supporting marriage and
promoting no fault divorce) can best be reconciled by requiring legally and
factually sufficient evidence to support rendition of a no fault divorce when
one spouse opposes the divorce and presents controverting testimony on the
statutory elements.”  As the Corpus Christi Court noted in Cusack, the
decision to protect society’s interests by allowing one spouse to seek and be
granted a divorce without a showing of fault was made by the Legislature when
it enacted the statute establishing insupportability as a grounds.  See
Cusack, 491 S.W.2d at 717.  We therefore confirm that when the statutory
grounds asserted were proven by satisfactory evidence, the trial court had no
discretion to deny the divorce.  See id. (“if that ground is established
by the evidence, a divorce must be granted”).  We overrule Craig’s second
issue.[1]

 

 

            Having overruled both issues, we
affirm the judgment








 

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed August 27, 2008

[CV06]









[1]
Craig cites Waite v. Waite, 64 S.W.3d
217 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (interlocutory appeal),
where the “Fourteenth court engaged in extended analysis of the statute which
sheds light on the policy concerns presented by Craig.”  In a plurality
opinion, the court rejected the husband’s constitutional challenge.  See
also Waite v. Waite, 150 S.W.3d 797 (Tex. App.—Houston [14th Dist.] 2004,
pet. denied).








 dead-end street.  The driver abandoned
the vehicle and jumped over a fence.  Smith
secured the vehicle, where he found a stocking mask and a large amount of
change inside Maxwell Books bags.

          Officer
Thomas responded to Smith’s dispatch.  He
testified that as he turned into the alleyway adjacent to the fence that the
suspect had jumped, a man matching the robber’s description almost ran into his
patrol car.  The man was wearing a
diamond-patterned shirt.  Thomas pursued
the man through the neighborhood. 
Several residents pointed to where the suspect had jumped a fence into
the backyard of a residence.  Through the
fence, Thomas saw Bradden sitting on the patio, not wearing a shirt.  When backup arrived, Thomas handcuffed
Bradden.  Police found the
diamond-patterned shirt in the next yard. 
The owner of the house told the officers that she had never seen Bradden
before.  The officers put the shirt over
Bradden’s head and walked him through the house.  Smith identified Bradden as the driver who
had abandoned the vehicle and jumped the fence.

          The
car was not registered to Bradden.  Thomas
testified that he found a gun (a BB gun) just outside the first fence the
suspect had jumped.  Bradden testified in
his own defense.  According to Bradden,
he was walking for exercise wearing only a pair of black pants and his house
shoes.  He was in an alley near his home
when a police car stopped and the officer asked him for identification.  He admitted that he had crossed the yard, but
claimed that the gate was unlocked.  He
testified that the police arrested him, placed someone else’s shirt over his
head, and walked him through the house. 
He admitted to four previous convictions, two for robbery and two for
aggravated robbery.




Legal
and Factual Sufficiency

          Bradden
argues that the evidence is legally and factually insufficient to support
either his conviction for robbery or his conviction for evading arrest.  When reviewing the legal sufficiency of the
evidence, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d
560 (1979).  We review factual
sufficiency by considering all of the evidence in a neutral light to determine
whether a jury was rationally justified in finding guilt beyond a reasonable
doubt.  Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. April 21, 2004).

          Bradden
argues that a rational juror could not have found that the State proved, beyond
a reasonable doubt, that Bradden was the robber.  Specifically, Bradden notes that the police
never found the paper money taken from the store, no fingerprints connected him
to any of the evidence, and the DNA evidence was not conclusive.  The state may prove identity with
circumstantial evidence.  Earls v. State, 707 S.W.2d 82, 85 (Tex.
Crim. App. 1986); Wilson v.
State, 9 S.W.3d 852, 855 (Tex. App.—Austin 2000, no pet.).  Smith identified Bradden in court as the
driver of the vehicle he pursued.  He
identified the shirt as the shirt Bradden was wearing at the time.  He identified the mask and Maxwell Books bags
found in the vehicle Bradden abandoned. 
Thomas identified Bradden as the man he encountered in the alleyway
wearing the diamond-patterned shirt.  Lujan
identified Bradden as the man she had seen outside the bookstore, and
identified the mask and shirt worn by the robber.

          Considering
all of the evidence in the light most favorable to the verdict, the jury could
rationally have found beyond a reasonable doubt that Bradden was the
robber.  Jackson, 443 U.S. at 318-319, 99 S.Ct. at 2788-89.  The evidence is legally sufficient.  Considering all of the evidence in a neutral
light, we cannot say the jury was not rationally justified in finding that Bradden
was the robber.  Zuniga, 2004 WL 840786, at *7.  The evidence is factually sufficient.  We overrule this issue.

          Bradden
argues that the evidence was legally and factually insufficient to support his
conviction for evading arrest. 
Specifically, he contends that the evidence is insufficient to prove
that he was the operator of the vehicle and that he knew that Smith was a
police officer.  Smith identified Bradden
both at the time of the arrest and in court as the driver of the vehicle.  He testified that when he turned on the
lights and siren of his unmarked police car, Bradden continued to travel down
several residential streets, stopping only when he reached a dead end.  Smith testified that Bradden bailed out of
the car and escaped by jumping a nearby fence. 
These events were videotaped from Smith’s vehicle, and the jury viewed
the videotape.  The jury could rationally
have found beyond a reasonable doubt that Bradden was the driver of the
vehicle.  The jury could also have
rationally determined beyond a reasonable doubt that Bradden knew the driver of
the vehicle pursuing him was a police officer and that Bradden took evasive
action.  Finding the evidence legally and
factually sufficient, we overrule this issue.

Impeachment

          Bradden
argues that the trial court erred in allowing the State to impeach him with
evidence of his 1972 convictions for robbery. 
The State provided pre-trial notice that it may use two 1972 convictions
for robbery, a 1978 conviction for aggravated robbery, and two 1979 convictions
for aggravated robbery to impeach Bradden. 
Texas Rule of Evidence 609(b) prohibits use of evidence of a conviction to
impeach a witness if more than ten years has elapsed since the date of the
conviction or of the release of the witness from the confinement imposed for
that conviction, whichever is the later date, unless the court determines, in
the interests of justice, that the probative value of the conviction
substantially outweighs its prejudicial effect. 
Tex. R. Evid. 609(b).  The trial court overruled Bradden’s objection
to the use of the 1972 conviction.

          The
Court of Criminal Appeals has identified five factors which the court should
consider in balancing probative value against prejudicial effect: (1) the
impeachment value of the prior conviction; (2) the temporal proximity of the
prior conviction; (3) the similarity between the past crime and the offense
being prosecuted; (4) the importance of the defendant’s testimony; and (5) the
importance of the credibility issue.  Theus v. State, 845 S.W.2d 874, 880
(Tex. Crim. App. 1992).  The trial court
has “wide discretion” in determining the admissibility of a prior conviction
under Rule 609.  Id. at 881. 
We will set aside the court’s ruling if it “lies outside the zone of
reasonable disagreement.”  Id.

Impeachment Value

          A
crime involving deception has a higher impeachment value than a crime involving
violence.  Id.  Crimes
involving violence tend to be more prejudicial. 
Id.  The State
offered no evidence in the hearing concerning the facts of the prior convictions
with regard to their impeachment value.  Robbery
does not necessarily involve deception, but it does involve threats, force, or
violence.  Based on the limited record
before us, we hold that this factor weighs against admissibility.  See
Jackson v. State, 50 S.W.3d 579, 592 (Tex. App.—Fort Worth 2001, pet
ref’d).

Temporal Proximity

          Rule
609(b) renders a prior conviction presumptively inadmissible if it is one for
which the witness had been released from custody more than ten years before
trial.  Tex.
R. Evid. 609(b); Jackson, 50
S.W.3d at 591; Butler v. State, 890
S.W.2d 950, 954 (Tex. App.—Waco 1995, pet. ref’d).  However, a trial court may nevertheless admit
a conviction deemed too remote under this rule if the court determines that,
under the “specific facts and circumstances,” the probative value of the
conviction substantially outweighs its prejudicial effect.  Id.  The
impeachment value of a “remote” prior felony conviction increases if the State
offers evidence of the lack of reformation or subsequent felony and certain
misdemeanor convictions.  See Lucas v. State, 791 S.W.2d 35, 51
(Tex. Crim. App. 1989); Jackson, 50 S.W.3d at 591.  The State introduced evidence that Bradden
had aggravated robbery convictions in 1978 and 1979, and that Bradden had only
recently been paroled for the 1978 conviction. 
This constitutes evidence of a lack of reformation and subsequent felony
convictions.  We hold that the facts and
circumstances presented tend to support the trial court’s determination that
the probative value of the 1972 conviction substantially outweighs its
prejudicial effect.

Similarity to Charged Offense

          The
fact that a prior conviction is similar to the present offense weighs against
its admissibility because the similarity might lead a jury to “convict on the
perception of a past pattern of conduct, instead of on the facts of the charged
offense.”  Theus, 845 S.W.2d at 881. 
Bradden’s 1972 conviction was for robbery, and he was on trial for
robbery in this case.  Accordingly, this
factor weighs against the admissibility of the prior conviction.

Importance of Defendant’s Testimony/Credibility

          When
a case involves the testimony only of the defendant and the State’s witnesses,
the importance of the defendant’s testimony and credibility escalates.  Id.  As the
importance of the defendant’s credibility escalates, so does the need to allow
the State the opportunity to impeach the defendant’s credibility.  Id.  These
factors favor admissibility.

Summary

          We
accord the trial court “wide discretion” in determining whether to admit a
prior conviction for impeachment under Rule 609.  Id. at 881; White
v. State, 21 S.W.3d 642, 646-47 (Tex. App.—Waco 2000, pet. ref’d).  Three of the five factors weigh in favor of
admissibility.  Under these
circumstances, we cannot say that the court’s decision “lies outside the zone
of reasonable disagreement.”  See id. 
We overrule the issue.

CONCLUSION

          Having
overruled the issues, we affirm the judgment.

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

          (Chief Justice Gray concurs in the
result without a separate opinion.)

Affirmed

Opinion
delivered and filed December 8,
 2004

Do not publish 

[CRPM]