

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-18-00124-CV

IN THE INTEREST OF A.E.,
A CHILD

----------

FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2009-21195-158

----------

## MEMORANDUM OPINION[1]

----------

Pending before the court is an appeal from a final order affecting the parent child relationship between A.E. and her parents. Her father, F.E., and mother, A.D., sought to modify various terms and conditions of a prior decree concerning custody of, possession of, and child support due A.E., among other things. Trial was to a jury, and judgment was rendered reflecting that verdict. F.E. seeks

---

[1]*See* Tex. R. App. P. 47.4.

reversal via five issues. We will address each in turn and, upon doing so, affirm the order.

### Issues One and Two – Excluding Evidence

Through his first two issues, F.E. contends that the trial court erred in excluding evidence pertaining to mental illness purportedly suffered by A.D.'s new husband and A.E.'s stepfather. The evidence was being developed through F.E.'S cross-examination of the stepfather. F.E. believed that the trial court erred in excluding it because the witness was competent to testify about his own condition and it was relevant to the issues being tried. We overrule the issues.

Though F.E. discussed the purported error in his brief, he said nothing about the effect of that error upon the outcome of the trial. That is, he failed to explain how the trial court's ruling harmed him. Harm must be shown before we can reverse a judgment. *See* Tex. R. App. P. 44.1(a) (stating that no judgment may be reversed on appeal on the basis that the trial court erred unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case). Furthermore, the burden to show harm in a civil appeal lies with the appellant; should he fail to address the topic, he has waived his complaint. *See Mullendore v. Muehlstein*, 441 S.W.3d 426, 429–30 (Tex. App.—El Paso 2014, pet. abated) (holding that Mullendore waived the issue because he failed to brief how the error caused rendition of an improper verdict); *In re K.C.R.T.*, No. 02-10-00425-CV, 2011 WL 3426258, at *7 (Tex. App.—Fort Worth Aug. 4, 2011, no

2

pet.) (mem. op.) (holding that "[e]ven assuming that the trial court abused its discretion by proceeding with a bench trial, as Mother cursorily contends, she does not assert any argument, analysis, or reference that the abuse of discretion constituted reversible error, and we decline to address that consideration in the absence of *any* such contention whatsoever by Mother"); *In re Marriage of Scott*, 117 S.W.3d 580, 584 (Tex. App.—Amarillo 2003, no pet.) (stating that the burden lies with an appellant to establish that the purported error caused rendition of an improper judgment).

There may be reason why F.E. said little about harm. It could be that the very evidence he wanted the factfinder to hear was actually heard by the factfinder. For instance, via issue two, he complained about the trial court's abusing its discretion because "it allowed testimony of [A.E.'s stepfather] regarding the fact he had taken medication for mental illness, but did not allow the most important factor that he had taken himself off the medication without medical advice of his health care professionals." Yet the record illustrates that the jury was allowed to hear A.E.'s stepfather admit that he 1) suffered from anxiety disorder and experienced depression, 2) received counseling for his mental condition beginning as early as 2003, 3) was prescribed various medications such as Effexor, Clonazepam, Klonopin, Paxil, and Ativan over the years for treatment of his mental condition, 4) was no longer taking medication for his mental condition, 5) "voluntarily" stopped taking the prescribed medication, and 6) still saw "a therapist every month" for "general anxiety disorder." The foregoing litany of data actually reveals that the

3

jury was allowed to hear "the most important factor," that being that A.E.'s stepfather "had taken himself off the medication."

As for whether the decision was made "without medical advice of his health care professionals," we were unable to find in the record where F.E. propounded the particular question to the witness. Instead, the record disclosed that when A.E.'s stepfather was first asked if he voluntarily ceased using the medication, the witness attempted to reply with: "Well, my -- my general practitioner suggested I try it without the medication." That response drew an immediate objection from F.E. himself. He believed the testimony to be "hearsay," and the trial court sustained the complaint. So the record also illustrates not only that F.E. himself prevented the jury from hearing whether or not A.E.'s stepfather's decision to stop taking medication was unilateral but also that if allowed to testify, A.E.'s stepfather would have contradicted F.E.'s current proposition that he made the decision without professional guidance.

Nor do we ignore like propositions being uttered by F.E. via issue one. There he argued, 1) "it is clear that such information [i.e., evidence of A.E.'s stepfather's mental condition] would have had an affect on any jury in their ability to evaluate the dangerous nature of the witness" and 2) "the mental stability of a witness who was purported to provide daily care of the child should have had a dramatic effect on a trial court seeking to be fair and impartial." But as shown above, the jury heard about A.E.'s stepfather's mental condition, its extent, its persistence, and

4

the medication he once but no longer took to treat it. And this leads us back to the topic at hand, namely, harm.

As said by this court in *General Motors Corp. v. Burry*, "[t]o establish harm . . . as to the exclusion of evidence, the appellant must demonstrate that the excluded evidence was both controlling on a material issue and not cumulative of other evidence." 203 S.W.3d 514, 545 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g). In other words, the "exclusion of evidence is generally not harmful when the excluded evidence is cumulative of other evidence." *Strickland Grp., Inc. v. Pathfinder Exp., LLC*, No. 02-12-00187-CV, 2013 WL 4773363, at *17 (Tex. App.—Fort Worth Sept. 5, 2013, no pet.). Here, F.E. complains of the trial court's excluding evidence akin to that it had already admitted, that is, in excluding cumulative evidence. Under those circumstances, and assuming arguendo that the trial court even erred, we cannot say the decision harmed F.E. as that term is defined in Rule 44.1(a). This is especially so in view of his failure to explain in his brief how the decision harmed him.

### Issue Three – Attorney's Fees

F.E. next contends that the trial court abused its discretion in awarding A.D. $45,000 in attorney's fees for work done through trial. In awarding the sum, the trial court simply assessed the amount found by the jury. F.E. does not question the sufficiency of the evidence underlying the amount given. Instead, he believes the trial court erred because 1) there was no finding that he acted frivolously or in bad faith; 2) there was "no need for payment of attorney's fees as a means of

5

'leveling the playing field'"; 3) the parties had between them no agreement to pay fees; 4) he was not found "guilty of an unreasonable delay or dilatory tactics"; 5) it did not matter that A.D. prevailed in the dispute; 6) the jury's verdict awarded fees to both parties; and 7) because he was "the responding party" in the suit, "[t]he chilling [e]ffect of being ha[]led into court and then required to pay attorney fees for the opposing party creates a dangerous precedent" violating Texas's open courts policy. We overrule the issue.

Complaints about attorney's fees are subject to the rules of preservation. *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.). One such rule requires that the grounds underlying a complaint raised at trial comport with the grounds raised on appeal. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *In re V.L.A.*, No. 02-13-00147-CV, 2013 WL 5434008, at *10 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (mem. op.). That rule was breached here.

F.E. filed a motion for new trial. One of the several reasons he urged purportedly entitling him to relief concerned the award of $45,000 in attorney's fees. He argued that the trial court abused its discretion in awarding them because 1) he was a "respondent" who was "forced to come to court at a time not of his choosing and selection"; 2) the trial court lacked "knowledge of how or exact reasons as to this matter being required for trial other than the dispute between the parties with regard to the primary residency of the minor child"; 3) awarding fees against a respondent "smacks of prejudice"; 4) an award of appellate

6

attorney's fees must be conditioned upon an unsuccessful appeal; and 5) interest on appellate attorney's fees does not begin accruing until the appellate court issues its judgment. That the trial court "made no finding with regard to interest provisions in ordering any attorney's fees" also was mentioned within the litany of written objections F.E. filed prior to the trial court's executing its final order.

Comparing the grounds asserted by F.E. at trial with those at bar, we discover that they differ. None mentioned here were encompassed within those uttered below. Consequently, those here were not preserved for review. *Banda*, 955 S.W.2d at 272; *V.L.A.*, 2013 WL 5434008, at *10.

### *Issue Four – Controlling the Docket*

F.E. next contends that the trial court "committed a 'bait and switch' approach toward . . . [him] ordering the appearance of witnesses at one time and then changing her mind in mid-trial with no compensation or consideration for any guiding principles of fairness or equity." This purported "bait and switch" allegedly occurred when A.D. completed the presentation of her witnesses earlier than anyone previously anticipated. The trial court directed F.E. to call his first witness, even though he had scheduled the appearance for the following day. This resulted in F.E.'s requesting a bench conference. The court acquiesced. What was said or done in that conference is unknown since the court reporter did not record it, and F.E. failed to ask that it be recorded. Once the conference ended, though, F.E. called himself to testify. According to F.E., the trial court abused its discretion by directing him to proceed. We overrule the issue for several reasons.

First, as with issues one and two, F.E. again failed to discuss the issue of harm. Assuming *arguendo* that a trial court's attempt to manage the orderly progress of a trial can be deemed an abuse of discretion, it is not our obligation to contrive a harm analysis for him. *Mullendore*, 441 S.W.3d at 429–30; *K.C.R.T.*, 2011 WL 3426258, at *7; *Marriage of Scott,* 117 S.W.3d at 584. And his failure to fulfill his burden relieves us from having to consider issue four. *See Mullendore*, 441 S.W.3d at 430.

Second, the record fails to illustrate that F.E. objected to the trial court's directive that he call his first witness early. And, assuming *arguendo* that he objected during the bench conference, we can only guess at the basis or grounds for his objection given the absence of a transcription of the bench conference. *See In re P.M.*, No. 02-14-00205-CV, 2014 WL 8097064, at *32 (Tex. App.—Fort Worth Dec. 31, 2014, pet. denied) (mem. op.) ("[B]ecause Mother did not ensure that the court reporter recorded the bench conferences during which the objections were discussed, she cannot show us how these rulings constituted bias against her."). We further note the absence of any written motion to continue the trial within the appellate record. Since error must be preserved for review through a *contemporaneous objection* stating the specific grounds underlying the objection, *see* Tex. R. App. P. 33.1(a); *L.H. v. N.H.*, No. 02-15-00116-CV, 2015 WL 7820489, at *3 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.), and the record

8

fails to illustrate either an objection or the grounds underlying it, F.E. also failed to preserve his complaint for review.[2]

### Issue Five – Challenges for Cause

In his final issue, F.E. contends that the trial court erred in denying challenges for cause levied against two venire members. We overrule the issue.

The two venire members were Wagner and Ingram. The former was purportedly biased because he revealed, during voir dire, his belief that a child should have a relationship with his or her mother. This belief was founded upon his experience with his children and their mother. When asked by counsel for F.E. whether the venire member "would start someone -- the mother out ahead, not knowing the facts, starting them out, saying you would want them to have the child, unless something really egregious has happened, correct," Wagner answered, "Yes, just from my experience." When asked if he was saying "that nothing [F.E.'s counsel] would say or [opposing counsel] would say would make you lay that aside[;] It would come with you into the jury box," Wagner said that "[i]t would."

---

[2]One of the many grounds mentioned in F.E.'s motion for new trial concerned the trial court's decision to proceed with the trial. A delayed objection in a motion for a new trial after the entry of judgment is not contemporaneous if the movant had the opportunity to complain earlier. *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 490 (Tex. App.—Eastland 2009, no pet.); *accord L.H.*, 2015 WL 7820489, at *3 (holding that appellant failed to preserve the particular grounds she asserted on appeal even though they were encompassed within a motion for new trial because those grounds were not mentioned when the evidence was tendered for admission at trial).

9

In turn, Ingram revealed, during voir dire, the existence of a prior abusive relationship with an ex-husband and discussed its influence on her. In doing so, she clarified that the abuse was directed towards her, not their child. F.E.'s counsel then asked whether she was "telling me [counsel] that [it] would so affect you emotionally that you would not be a fair and impartial juror." To the question, Ingram answered: "I don't think the abuse of anybody would let me be at peace with . . . making choices for . . . a child's safety and welfare." Other questions were also propounded by counsel. For instance, when asked if her "experiences would come into the jury box" and whether she "would lay them aside," she answered, "If I heard something that was very painful, I'm not saying I would not tear up again." Ingram also replied, "I probably could not," when asked if she could lay aside the abuse when it came time to walk into the jury box. She also conceded that she did not "think" she "could be a very impartial juror in this particular case."

Again, F.E. challenged both venire members for cause, which challenge the trial court denied. That led him to use preemptory challenges to remove them as members of the panel. The trial court was informed of the circumstance and was asked for additional preemptory challenges to remove particular individuals deemed objectionable who could sit on the panel if additional challenges were not granted. F.E.'s additional challenges were denied.

As previously said by this court, "Texas law disqualifies venire members who are unequivocally biased or prejudiced." *Smith v. Dean*, 232 S.W.3d 181, 189 (Tex. App.—Fort Worth 2007, pet. denied). It continued by explaining that if a

10

venire member "unequivocally expresses bias, the venire member is disqualified as a matter of law, and the trial court has no discretion to decide whether to strike the venire member." *Id.* at 190. Yet the same is not true when bias or prejudice has not been established as a matter of law, that is, when the potential juror is equivocal. In the latter situation, the trial court is called upon to exercise its discretion in deciding whether to remove the potential juror. *Id.* And, the court observed, that discretion is not abused where the trial court refuses "to strike a juror who expresses bias when the juror equivocates or is 'rehabilitated.'" *Id.*

As seen from the answers Wagner uttered in reply to the questions asked of him, he did not express an unequivocal bias or prejudice toward either party or the issues involved. Though indicating that he would "start . . . the mother out ahead" by wanting a mother to have the child, he did not state that his viewpoint was unmalleable. Rather, his response was uttered to a question conditioned upon him "not knowing the facts." This is of import given the words of the supreme court in *Cortez v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87 (Tex. 2005). There we were told that to be disqualified, the juror must have a state of mind leading to the natural inference that he *will not* act with impartiality. *Cortez*, 159 S.W.3d at 94. So the relevant question is not where the potential juror starts but where he is likely to end. *Id.* Indeed, an initial leaning is not disqualifying if it represents less than "unshakeable conviction." *Id.* In applying these words to the circumstances at bar, we observe that one may have a particular viewpoint when beginning his journey

11

down a road while "not knowing the facts." Such, however, does not mean that the viewpoint will remain the same once the facts become known.

Similarly, Ingram expressed that she "probably" could not ignore her experience with an abusive husband and did not "think" she could be impartial. "Probably" being unable to do something does not equate to being unable to do it. It was once thought that man would probably fall off the edge of the earth if he sailed beyond the horizon. We have since found that probable outcome to be wrong. And though one may probably not beat the house in Las Vegas, there still are those who do. Simply put, probably doing something is far short of certitude or unshakeable conviction that it will be done. No less is true when one conditions his action on the word "think." All who "think" the underdog will lose often encounter unexpected surprises. Indeed, thinking that an outcome will be one way does not necessarily preclude it from being another. So Ingram "think[ing]" she could be partial or affected by evidence that strikes emotional chords falls short of evincing an "unshakeable conviction" that she will be partial or biased. *See Burry*, 203 S.W.3d at 547 (observing that questioned venire member "said I don't think I can . . . [but] never said she couldn't" when asked about making a decision solely on the evidence and, in light of these equivocal terms, deferring to the trial court's superior position from which to observe venire member's demeanor, expressions, tone, and vocal inflection); *Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 295–96 (Tex. App.—Beaumont 2005, pet. denied) (comparing statements from jurors which "indicated without equivocation that they would favor [plaintiff] in this case

12

with an award even if he failed to prove his case" to those from another juror who indicated she "might have trouble" or "*would have trouble* not giving him money," noting that the latter position leaves open the interpretation that, although it might be difficult for her, the juror "still had the capacity to follow the [trial court's] instructions").  In short, the entirety of the exchanges between F.E.'s counsel and Ingram may reveal a potential for bias but not the "unshakeable conviction" to act with bias alluded to in *Cortez*.

Given the equivocation expressed by both Wagner and Ingram, it fell upon the trial court to exercise its discretion in deciding whether the venire members were impermissibly biased or prejudiced.  Unlike us, the trial court was "in a better position . . . to evaluate the [jurors'] sincerity and . . . capacity for fairness and impartiality," since it was present at voir dire and we were not.  *See Burry*, 203 S.W.3d at 546 (citation omitted).  That ability to view intangible indicia beyond the cold appellate record before us prevents us from concluding that the trial court abused its discretion in denying F.E.'s challenges for cause.

Having overruled each issue, we affirm the final order of the trial court.

/s/ Brian Quinn

BRIAN QUINN
CHIEF JUSTICE

PANEL:  WALKER and KERR, JJ.; and QUINN, C.J. (Sitting by Assignment).

DELIVERED:  August 9, 2018

13