

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00425-CV

IN THE INTEREST OF K.C.R.T.
AND K.C.-J.T., MINOR CHILDREN

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant K.C.T. (Mother) appeals from the order terminating her parental rights to her children, K.C.R.T. and K.C.-J.T. We will affirm.

### II. BACKGROUND

K.C.R.T. and K.C.-J.T. are Mother's children. K.C.R.T. was born in March 2007. K.C.-J.T. was born in October 2008. The children's father, J.M., never

---

[1]*See* Tex. R. App. P. 47.4.

made an appearance in the lawsuit, and the trial court terminated his parental rights to the children.[2]

Appellee Department of Family and Protective Services (DFPS) received a referral alleging neglectful supervision of the children by Mother in July 2009. The ensuing investigation revealed that Mother and her boyfriend were involved in a "scuffle" while Mother and the children were living at a motel. DFPS located Mother and the children living in Lewisville, and Mother admitted that at the time of the incident at the motel, she and her boyfriend had been drinking, she was the aggressor, and she had hit her boyfriend. Mother and the children were evicted from the motel as a result of the family violence incident. Mother did not admit having a problem with alcohol, but during the investigation, DFPS learned that Mother thought that she needed "a drink to get by, to go to bed in the evening[,] and to get up in the morning." Investigators also learned that on one occasion while Mother and the children were living at the motel, Mother had left the children with a couple who was allegedly intoxicated while she and her boyfriend went to the store.

In early August 2009, Mother entered into a safety plan with DFPS and agreed to not use alcohol or drugs while caring for the children. However, just a few days later, DFPS learned that Mother had been arrested for public intoxication. At this point, Mother admitted that she had a problem with alcohol,

---

[2]J.M. is not a party to this appeal.

2

DFPS asked her to start attending AA meetings, and the children were voluntarily placed with their maternal grandmother.

In late August 2009, when DFPS visited Mother's residence to reschedule a Family Based Safety Services (FBSS) assessment that Mother had missed, it discovered that she was intoxicated—she had slurred speech, she could not stand up, and she admitted that she had been drinking. DFPS consequently held an emergency "family team meeting" to address Mother's continued drinking, including her missing an appointment with "Friends of the Family" because of her drinking. Mother admitted that she was an alcoholic and that she could not provide a safe and stable environment for the children until she completed some form of treatment. The children were placed with Sarah White because the maternal grandmother could not care for the children due to medical problems. On August 27, 2009, White returned the children to DFPS because she could no longer care for them. At this point, DFPS filed its original petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship, and the children were placed in foster care.

Mother agreed to temporary orders, and a service plan with an initial permanency goal of "Family Reunification" was eventually entered. Mother was required to attend weekly visits with the children, pay child support, take a psychological evaluation, perform weekly individual counseling sessions, complete parenting classes, take a drug and alcohol assessment, submit to random drug testing, maintain safe and suitable housing, not engage in any

3

criminal activity, and not have unsupervised contact with children under age sixteen. Over the course of the case, Mother performed a "good number of services." She attended the "majority" of visits with the children, but she missed a visit on October 7, 2010, and was late for the October 14, 2010 visit; she attended the "majority" of individual counseling sessions; she took a drug and alcohol evaluation, which recommended inpatient treatment and daily AA/NA meetings; she completed some AA/NA meetings; she completed parenting classes; she took a psychological evaluation; she completed inpatient treatment; she participated in outpatient treatment beginning in July 2010; she did not fail a drug or alcohol test after December 2009; but she did not pay child support of $100 per month, and she did not maintain suitable housing. Mother worked at a restaurant until January 2010, at which time she took some time off from work to focus on her services. At the time of the final trial, she worked at a different restaurant. In August 2010, the trial court signed an order extending the case's original dismissal date to "allow sufficient time to fully observe [Mother's] sobriety prior to trial," considering that Mother had recently completed her inpatient rehabilitation.

In late July 2010, Mother was run over by her boyfriend's truck at 3:45 a.m. after an argument, and she was taken by CareFlite to a hospital. In October 2010, Mother was involved in at least one or two other instances of domestic violence with the same boyfriend who ran her over. During a permanency

4

hearing several days before the final trial, Mother smelled strongly of alcohol and, according to one person, was under the influence of alcohol.

Mother did not show up for the final trial on November 8, 2010, even though her trial counsel had advised her of the setting.[3] The trial court decided to proceed with a bench trial, instead of a jury trial as Mother had requested.[4] After hearing testimony from Candice Williams, a caseworker for DFPS; Sandy Moresco, the CASA supervisor appointed to Mother's case; and the maternal grandmother, the trial court terminated Mother's parental rights to the children. In the final order terminating Mother's parental rights to the children, the trial court found by clear and convincing evidence that Mother had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West Supp. 2010). The trial court also found by clear and convincing

---

[3]Mother explained at the hearing on her motion for new trial that she did not show up for trial because she had accidentally overdosed the night before by taking ten sleeping pills, hospitalizing her.

[4]Mother's trial counsel was present and participated in the trial. Trial counsel stated that he could not waive a jury trial without Mother's consent.

evidence that termination of Mother's parental rights was in the children's best interests. *See id.* § 161.001(2). Mother appeals.

## III. Burden of Proof and Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985); *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001, § 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574.

7

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## IV. EVIDENTIARY SUFFICIENCY—ENDANGERMENT

In her first, second, third, and fourth points, Mother argues that the evidence is both legally and factually insufficient to support the trial court's family code section 161.001(1)(D) and (E) endangerment findings.

Endangerment means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(D). Under subsection (D), it is necessary to examine evidence related to the environment of

8

the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under section 161.001(1)(D). *Id.* Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *J.T.G.*, 121 S.W.3d at 125.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634. Evidence of alcohol abuse by a parent is often cited as conduct that will

9

support an affirmative finding that the parent has engaged in a course of conduct that has the effect of endangering the child. *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.).

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re D.M.*, 58 S.W.3d 801, 812–13 (Tex. App.—Fort Worth 2001, no pet.). A factfinder may also infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126. Williams testified that DFPS has "a lot" of concerns about Mother's having custody of the children but that DFPS's biggest concerns regarded Mother's continuing alcohol use and involvement in domestic violence.

10

Regarding Mother's alcohol use, Mother admitted that she and her boyfriend had been drinking when the incident at the motel occurred in July 2009, and DFPS learned around the same time that Mother needed a drink "to get by" both in the morning and at night. Mother was arrested for public intoxication in August 2009 and acknowledged that she had a problem with alcohol. After the children were placed with the maternal grandmother, DFPS visited Mother's residence and observed that she was intoxicated. Mother also missed an appointment with "Friends of the Family" because of her drinking. Although Mother had successfully completed inpatient treatment and attended intensive outpatient treatment and AA/NA meetings, she showed up for a hearing just three days before the final trial under the influence of alcohol.[5]

The record also demonstrates that Mother has a history of engaging in domestic violence. She was involved in a scuffle with her boyfriend in July 2009, she was run over by her boyfriend in his truck in late July 2010 after an argument, and she was involved in one or two other instances of domestic violence in October 2010. Mother continued to reside with the boyfriend after the truck incident.

Williams agreed that Mother's "track record [has] been that she's able to complete some services, participate in some services, and then she drops off for

---

[5]At trial, Mother's attorney questioned Williams about her knowledge of an incident in March 2009 in which Mother had passed out in a Wal-Mart when she had the children.

a period of time." Williams testified that at the time of trial, Mother was still drinking and still having domestic violence issues and that the drinking and domestic violence put the children at risk. Williams opined that Mother is not stable and that she is not reliable enough to care for the young children, who are completely reliant on adults to care for them. The record supports Williams's opinion.

Moresco agreed with DFPS that Mother had failed to alleviate the reasons for her losing possession of the children. Moresco testified that Mother still drinks even though she completed inpatient treatment and that she had engaged in family violence as recently as approximately four weeks before trial. Moresco testified as follows regarding Mother's consumption of alcohol:

> Q. Now, we're not talking about social drinking. Would that be fair to say?
>
> A. Correct.
>
> Q. We're talking about some pretty serious alcohol use?
>
> A. Yes.
>
> Q. Is - - is a parent able to properly care for a child and meet the child's needs when the parent is regularly under the influence of alcohol?
>
> A. No.

The children's maternal grandmother agreed that Mother's "main issue" in the case was her ongoing struggle with alcohol.

The maternal grandmother testified that the children were never physically abused and were never homeless, and Mother points out that she was able to put food on the table and pay for medical care, but this evidence does not render the evidence legally and factually insufficient to support the challenged findings.

Accordingly, giving due deference to the trial court's findings, we hold that the trial court could have formed a firm belief or conviction that Mother engaged in conduct or knowingly placed or knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being. *See* Tex. Fam. Code. Ann. § 161.001(1)(D), (E). We hold that the evidence is legally and factually sufficient to support the trial court's family code section 161.001(1)(D) and (E) findings. We overrule Mother's first, second, third, and fourth points. Having overruled those points, we need not address—and therefore overrule— her sixth and seventh points challenging the legal and factual sufficiency of the evidence to support the trial court's section 161.001(1)(O) finding. *See* Tex. R. App. P. 47.1; *J.L.*, 163 S.W.3d at 84 (stating that parent must have committed only one of the acts prohibited under family code section 161.001(1) for termination of her parental rights).

## V. EVIDENTIARY SUFFICIENCY—BEST INTEREST

We construe Mother's fifth point as a challenge to the legal and factual sufficiency of the evidence to support the trial court's finding that termination of

13

the parent-child relationship between Mother and the children is in the children's best interests.[6]

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008) (listing factors that should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–

---

[6]Mother merely states in her "Issues Presented" section, "The Trial Court's finding that termination of the parental rights of Appellant to the children, K.C.R.T. and K.C.-J.T. was in the best interest of the children." But she does state at the conclusion of her brief that the evidence is legally and factually insufficient to support the trial court's order.

72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases, and other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.* at 28.

The evidence detailed in the section above regarding Mother's alcohol abuse and domestic violence is probative in addressing the best interest inquiry. *See id.* Further, Williams testified that Mother has a history of leaving the children with various individuals, including at least one of her boyfriends with whom she had a domestic dispute and an allegedly intoxicated couple at the motel from where she and the children were evicted. Williams testified that it is important for a child to have a stable home but that Mother had failed to demonstrate during the pendency of the case that she can provide stability for the children and maintain suitable housing. Moresco testified that Mother has a "great heart" but that she will not "get it together" before the case is over. The children are bonded with Mother, but Williams, Moresco, and even the children's maternal grandmother testified that it was in the children's best interests for Mother's parental rights to be terminated. According to Williams, the children are

15

placed in an adoption-motivated foster home, and the foster parents love the children.

Considering the relevant statutory factors in evaluating Mother's willingness and ability to provide the children with a safe environment and the relevant *Holley* factors, we hold that, in light of the entire record, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, the trial court could reasonably have formed a firm belief or conviction that termination of Mother's parental rights to the children is in the children's best interests. Accordingly, the evidence is legally and factually sufficient to support the trial court's family code section 161.001(2) best interest finding. We overrule Mother's fifth issue.

## VI. JURY TRIAL

In her eighth issue, Mother argues that the trial court abused its discretion by proceeding with a bench trial instead of a jury trial. In addition to citing rule of civil procedure 220, Mother's argument is as follows: "Although [Mother] did not appear for trial, her attorney appeared. Thus the court abused its discretion by removing [Mother's] case from the jury docket." Even assuming that the trial court abused its discretion by proceeding with a bench trial, as Mother cursorily contends, she does not assert any argument, analysis, or reference that the abuse of discretion constituted reversible error, and we decline to address that consideration in the absence of *any* such contention whatsoever by Mother. *See Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991) ("A refusal to grant a jury

16

trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified"); *In re Marriage of Scott*, 117 S.W.3d 580, 584 (Tex. App.—Amarillo 2003, no pet.) (reasoning that showing harm is "of import since the burden lay with [appellant] to establish on appeal that the purported error caused the rendition of an improper judgment" and declining to conduct harm analysis because "[appellant] neither argues nor attempts to illustrate the effect, if any, that the court's finding had upon the judgment ultimately rendered"). We overrule Mother's eighth issue.

## VII. CONCLUSION

Having overruled Mother's dispositive points, we affirm the trial court's order terminating Mother's parental rights to K.C.R.T. and K.C.-J.T.


BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

GARDNER, J. concurs without opinion.

DELIVERED: August 4, 2011

17