02-10-425-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00425-CV

 

 


 
 
 In the Interest of K.C.R.T. and K.C.-J.T., Minor
 Children
 
 
  
 
 
  
 
 


 

 

----------

 

FROM THE 367th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
K.C.T. (Mother) appeals from the order terminating her parental rights to her
children, K.C.R.T. and K.C.-J.T.  We will affirm.

II.  Background

          K.C.R.T.
and K.C.-J.T. are Mother’s children.  K.C.R.T. was born in March 2007. 
K.C.-J.T. was born in October 2008.  The children’s father, J.M., never made an
appearance in the lawsuit, and the trial court terminated his parental rights
to the children.[2]

          Appellee
Department of Family and Protective Services (DFPS) received a referral alleging
neglectful supervision of the children by Mother in July 2009.  The ensuing
investigation revealed that Mother and her boyfriend were involved in a “scuffle”
while Mother and the children were living at a motel.  DFPS located Mother and
the children living in Lewisville, and Mother admitted that at the time of the
incident at the motel, she and her boyfriend had been drinking, she was the
aggressor, and she had hit her boyfriend.  Mother and the children were evicted
from the motel as a result of the family violence incident.  Mother did not
admit having a problem with alcohol, but during the investigation, DFPS learned
that Mother thought that she needed “a drink to get by, to go to bed in the
evening[,] and to get up in the morning.”  Investigators also learned that on
one occasion while Mother and the children were living at the motel, Mother had
left the children with a couple who was allegedly intoxicated while she and her
boyfriend went to the store.

          In
early August 2009, Mother entered into a safety plan with DFPS and agreed to not
use alcohol or drugs while caring for the children.  However, just a few days
later, DFPS learned that Mother had been arrested for public intoxication.  At
this point, Mother admitted that she had a problem with alcohol, DFPS asked her
to start attending AA meetings, and the children were voluntarily placed with
their maternal grandmother.

          In
late August 2009, when DFPS visited Mother’s residence to reschedule a Family
Based Safety Services (FBSS) assessment that Mother had missed, it discovered
that she was intoxicated—she had slurred speech, she could not stand up, and
she admitted that she had been drinking.  DFPS consequently held an emergency
“family team meeting” to address Mother’s continued drinking, including her missing
an appointment with “Friends of the Family” because of her drinking.  Mother
admitted that she was an alcoholic and that she could not provide a safe and
stable environment for the children until she completed some form of
treatment.  The children were placed with Sarah White because the maternal grandmother
could not care for the children due to medical problems.  On August 27, 2009, White
returned the children to DFPS because she could no longer care for them.  At
this point, DFPS filed its original petition for protection of a child, for
conservatorship, and for termination in suit affecting the parent-child
relationship, and the children were placed in foster care.

          Mother
agreed to temporary orders, and a service plan with an initial permanency goal
of “Family Reunification” was eventually entered.  Mother was required to attend
weekly visits with the children, pay child support, take a psychological
evaluation, perform weekly individual counseling sessions, complete parenting
classes, take a drug and alcohol assessment, submit to random drug testing,
maintain safe and suitable housing, not engage in any criminal activity, and
not have unsupervised contact with children under age sixteen.  Over the course
of the case, Mother performed a “good number of services.”  She attended the
“majority” of visits with the children, but she missed a visit on October 7,
2010, and was late for the October 14, 2010 visit; she attended the “majority”
of individual counseling sessions; she took a drug and alcohol evaluation,
which recommended inpatient treatment and daily AA/NA meetings; she completed
some AA/NA meetings; she completed parenting classes; she took a psychological
evaluation; she completed inpatient treatment; she participated in outpatient
treatment beginning in July 2010; she did not fail a drug or alcohol test after
December 2009; but she did not pay child support of $100 per month, and she did
not maintain suitable housing.  Mother worked at a restaurant until January
2010, at which time she took some time off from work to focus on her services.  At
the time of the final trial, she worked at a different restaurant.  In August
2010, the trial court signed an order extending the case’s original dismissal
date to “allow sufficient time to fully observe [Mother’s] sobriety prior to
trial,” considering that Mother had recently completed her inpatient
rehabilitation.

          In
late July 2010, Mother was run over by her boyfriend’s truck at 3:45 a.m. after
an argument, and she was taken by CareFlite to a hospital.  In October 2010, Mother
was involved in at least one or two other instances of domestic violence with the
same boyfriend who ran her over.  During a permanency hearing several days
before the final trial, Mother smelled strongly of alcohol and, according to
one person, was under the influence of alcohol.

          Mother
did not show up for the final trial on November 8, 2010, even though her trial
counsel had advised her of the setting.[3]  The trial court decided
to proceed with a bench trial, instead of a jury trial as Mother had requested.[4] 
After hearing testimony from Candice Williams, a caseworker for DFPS; Sandy
Moresco, the CASA supervisor appointed to Mother’s case; and the maternal
grandmother, the trial court terminated Mother’s parental rights to the
children.  In the final order terminating Mother’s parental rights to the
children, the trial court found by clear and convincing evidence that Mother
had (1) knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered their physical or emotional well-being;
(2) engaged in conduct or knowingly placed the children with persons who
engaged in conduct that endangered their physical or emotional well-being; and
(3) failed to comply with the provisions of a court order that
specifically established the actions necessary to obtain the return of the
children.  See Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West
Supp. 2010).  The trial court also found by clear and convincing evidence that
termination of Mother’s parental rights was in the children’s best interests.  See
id. § 161.001(2).  Mother appeals.

III.  Burden of Proof and Standard of Review

          A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388,
1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While
parental rights are of constitutional magnitude, they are not absolute.  Just
as it is imperative for courts to recognize the constitutional underpinnings of
the parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In re
C.H., 89 S.W.3d 17, 26 (Tex. 2002).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick v. Smith, 685 S.W.2d 18, 20–21 (Tex. 1985);
In re R.R., 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

          In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination
is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001; In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex. Dep’t of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987).

          Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001, § 161.206(a) (West 2008).  Evidence is clear and
convincing if it “will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established.”  Id.
§ 101.007 (West 2008).  Due process demands this heightened standard
because termination results in permanent, irrevocable changes for the parent
and child.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see
In re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007) (contrasting
standards for termination and modification).

          In
evaluating the evidence for legal sufficiency in parental termination cases, we
must determine whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction that the grounds for termination were proven. 
In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the
evidence in the light most favorable to the finding and judgment.  Id.  We
resolve any disputed facts in favor of the finding if a reasonable factfinder
could have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we disregard
contrary evidence unless a reasonable factfinder could not.  Id.  We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.

          In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our
own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine
whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parent violated the relevant conduct provisions
of section 161.001(1) and that the termination of the parent-child relationship
is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001; C.H.,
89 S.W.3d at 28.  If, in light of the entire record, the disputed evidence that
a reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M., 209 S.W.3d at 108.

IV.  Evidentiary Sufficiency—Endangerment

          In
her first, second, third, and fourth points, Mother argues that the evidence is
both legally and factually insufficient to support the trial court’s family
code section 161.001(1)(D) and (E) endangerment findings.

          Endangerment
means to expose to loss or injury, to jeopardize.  In re J.T.G.,
121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).  The trial court may
order termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Tex. Fam. Code Ann. § 161.001(1)(D).  Under subsection (D), it is
necessary to examine evidence related to the environment of the child to
determine if the environment was the source of endangerment to the child=s
physical or emotional well-being.  In re D.T., 34 S.W.3d 625, 632
(Tex. App.—Fort Worth 2000, pet. denied).  A child is endangered when the
environment creates a potential for danger that the parent is aware of but
disregards.  In re M.R.J.M., 280 S.W.3d 494, 502 (Tex. App.—Fort Worth
2009, no pet.).  Inappropriate, abusive, or unlawful conduct by persons who
live in the child’s home or with whom the child is compelled to associate on a
regular basis in his home is a part of the “conditions or surroundings” of the
child’s home under section 161.001(1)(D).  Id.  Conduct of a parent in
the home can create an environment that endangers the physical and emotional
well-being of a child.  J.T.G., 121 S.W.3d at 125.

          The
trial court may order termination of the parent-child relationship if it finds
by clear and convincing evidence that the parent has engaged in conduct or
knowingly placed the child with persons who engaged in conduct that endangers
the physical or emotional well-being of the child.  Tex. Fam. Code Ann. § 161.001(1)(E). 
Under subsection (E), the relevant inquiry is whether evidence exists that the
endangerment of the child=s physical or emotional
well-being was the direct result of the parent=s
conduct, including acts, omissions, and failures to act.  J.T.G., 121
S.W.3d at 125.  Termination under subsection (E) must be based on more than a
single act or omission; a voluntary, deliberate, and conscious course of
conduct by the parent is required.  Id.; D.T., 34 S.W.3d
at 634.  Evidence of alcohol abuse by a parent is often cited as conduct that
will support an affirmative finding that the parent has engaged in a course of
conduct that has the effect of endangering the child.  In re S.N.,
272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.).

          As
a general rule, conduct that subjects a child to a life of uncertainty and
instability endangers the child=s physical and emotional
well-being.  In re S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio
1998, pet. denied).  To support a finding of endangerment, the parent=s
conduct does not necessarily have to be directed at the child, and the child is
not required to suffer injury.  Boyd, 727 S.W.2d at 533.  The specific
danger to the child=s well-being may be inferred
from parental misconduct alone, and to determine whether termination is
necessary, courts may look to parental conduct both before and after the child=s
birth.  Id.; In re D.M., 58 S.W.3d 801, 812–13 (Tex. App.—Fort
Worth 2001, no pet.).  A factfinder may also infer from past conduct
endangering the well-being of the child that similar conduct will recur if the
child is returned to the parent.  In re M.M., No. 02-08-00029-CV,
2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem.
op.).

          Because
the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated,
we conduct a consolidated review.  In re T.N.S., 230 S.W.3d 434,
439 (Tex. App.—San Antonio 2007, no pet.); J.T.G., 121 S.W.3d at 126. 
Williams testified that DFPS has “a lot” of concerns about Mother’s having custody
of the children but that DFPS’s biggest concerns regarded Mother’s continuing alcohol
use and involvement in domestic violence.

          Regarding
Mother’s alcohol use, Mother admitted that she and her boyfriend had been
drinking when the incident at the motel occurred in July 2009, and DFPS learned
around the same time that Mother needed a drink “to get by” both in the morning
and at night.  Mother was arrested for public intoxication in August 2009 and acknowledged
that she had a problem with alcohol.  After the children were placed with the
maternal grandmother, DFPS visited Mother’s residence and observed that she was
intoxicated.  Mother also missed an appointment with “Friends of the Family”
because of her drinking.  Although Mother had successfully completed inpatient treatment
and attended intensive outpatient treatment and AA/NA meetings, she showed up
for a hearing just three days before the final trial under the influence of
alcohol.[5]

          The
record also demonstrates that Mother has a history of engaging in domestic
violence.  She was involved in a scuffle with her boyfriend in July 2009, she
was run over by her boyfriend in his truck in late July 2010 after an argument,
and she was involved in one or two other instances of domestic violence in October
2010.  Mother continued to reside with the boyfriend after the truck incident.

          Williams
agreed that Mother’s “track record [has] been that she’s able to complete some
services, participate in some services, and then she drops off for a period of
time.”  Williams testified that at the time of trial, Mother was still drinking
and still having domestic violence issues and that the drinking and domestic
violence put the children at risk.  Williams opined that Mother is not stable
and that she is not reliable enough to care for the young children, who are
completely reliant on adults to care for them.  The record supports Williams’s
opinion.

          Moresco
agreed with DFPS that Mother had failed to alleviate the reasons for her losing
possession of the children.  Moresco testified that Mother still drinks even
though she completed inpatient treatment and that she had engaged in family
violence as recently as approximately four weeks before trial.  Moresco
testified as follows regarding Mother’s consumption of alcohol:

          Q.      Now,
we’re not talking about social drinking.  Would that be fair to say?

 

          A.      Correct.

 

          Q.      We’re
talking about some pretty serious alcohol use?

 

          A.      Yes.

 

          Q.      Is
- - is a parent able to properly care for a child and meet the child’s needs
when the parent is regularly under the influence of alcohol?

 

          A.      No.

 

The children’s
maternal grandmother agreed that Mother’s “main issue” in the case was her
ongoing struggle with alcohol.

          The
maternal grandmother testified that the children were never physically abused
and were never homeless, and Mother points out that she was able to put food on
the table and pay for medical care, but this evidence does not render the
evidence legally and factually insufficient to support the challenged findings.

          Accordingly,
giving due deference to the trial court’s findings, we hold that the trial
court could have formed a firm belief or conviction that Mother engaged in
conduct or knowingly placed or knowingly allowed the children to remain in
conditions that endangered their physical or emotional well-being.  See
Tex. Fam. Code. Ann. § 161.001(1)(D), (E).  We hold that the evidence is
legally and factually sufficient to support the trial court’s family code
section 161.001(1)(D) and (E) findings.  We overrule Mother’s first, second,
third, and fourth points.  Having overruled those points, we need not
address—and therefore overrule—her sixth and seventh points challenging the legal
and factual sufficiency of the evidence to support the trial court’s section
161.001(1)(O) finding.  See Tex. R. App. P. 47.1; J.L., 163
S.W.3d at 84 (stating that parent must have committed only one of the acts
prohibited under family code section 161.001(1) for termination of her parental
rights).

V.  Evidentiary Sufficiency—Best Interest

          We
construe Mother’s fifth point as a challenge to the legal and factual
sufficiency of the evidence to support the trial court’s finding that
termination of the parent-child relationship between Mother and the children is
in the children’s best interests.[6]

          There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006). 
Prompt and permanent placement of the child in a safe environment is also
presumed to be in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a)
(West 2008) (listing factors that should be considered in evaluating the
parent’s willingness and ability to provide the child with a safe environment). 
Nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:  (A) the
desires of the child; (B) the emotional and physical needs of the child
now and in the future; (C) the emotional and physical danger to the child
now and in the future; (D) the parental abilities of the individuals
seeking custody; (E) the programs available to assist these individuals to
promote the best interest of the child; (F) the plans for the child by
these individuals or by the agency seeking custody; (G) the stability of
the home or proposed placement; (H) the acts or omissions of the parent which
may indicate that the existing parent-child relationship is not a proper one;
and (I) any excuse for the acts or omissions of the parent.  Holley v.
Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not
exhaustive; some listed factors may be inapplicable to some cases, and other
factors not on the list may also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be
sufficient in a particular case to support a finding that termination is in the
best interest of the child.  Id.  On the other hand, the presence of
scant evidence relevant to each factor will not support such a finding.  Id. 
The same evidence of acts or omissions used to establish grounds for
termination under section 161.001(1) may be probative in determining the best
interest of the child.  Id. at 28.

          The
evidence detailed in the section above regarding Mother’s alcohol abuse and
domestic violence is probative in addressing the best interest inquiry.  See
id.  Further, Williams testified that Mother has a history of leaving the
children with various individuals, including at least one of her boyfriends
with whom she had a domestic dispute and an allegedly intoxicated couple at the
motel from where she and the children were evicted.  Williams testified that it
is important for a child to have a stable home but that Mother had failed to demonstrate
during the pendency of the case that she can provide stability for the children
and maintain suitable housing.  Moresco testified that Mother has a “great
heart” but that she will not “get it together” before the case is over.  The
children are bonded with Mother, but Williams, Moresco, and even the children’s
maternal grandmother testified that it was in the children’s best interests for
Mother’s parental rights to be terminated.  According to Williams, the children
are placed in an adoption-motivated foster home, and the foster parents love
the children.

          Considering
the relevant statutory factors in evaluating Mother’s willingness and ability
to provide the children with a safe environment and the relevant Holley
factors, we hold that, in light of the entire record, and giving due
consideration to evidence that the trial court could have reasonably found to
be clear and convincing, the trial court could reasonably have formed a firm
belief or conviction that termination of Mother’s parental rights to the
children is in the children’s best interests.  Accordingly, the evidence is
legally and factually sufficient to support the trial court’s family code
section 161.001(2) best interest finding.  We overrule Mother’s fifth issue.

VI.  Jury Trial

          In
her eighth issue, Mother argues that the trial court abused its discretion by proceeding
with a bench trial instead of a jury trial.  In addition to citing rule of
civil procedure 220, Mother’s argument is as follows:  “Although [Mother] did
not appear for trial, her attorney appeared.  Thus the court abused its
discretion by removing [Mother’s] case from the jury docket.”  Even assuming that
the trial court abused its discretion by proceeding with a bench trial, as Mother
cursorily contends, she does not assert any argument, analysis, or reference that
the abuse of discretion constituted reversible error, and we decline to address
that consideration in the absence of any such contention whatsoever by
Mother.  See Halsell v. Dehoyos, 810 S.W.2d 371, 372 (Tex. 1991) (“A
refusal to grant a jury trial is harmless error only if the record shows that
no material issues of fact exist and an instructed verdict would have been
justified”); In re Marriage of Scott, 117 S.W.3d 580, 584 (Tex.
App.—Amarillo 2003, no pet.) (reasoning that showing harm is “of import since
the burden lay with [appellant] to establish on appeal that the purported error
caused the rendition of an improper judgment” and declining to conduct harm
analysis because “[appellant] neither argues nor attempts to illustrate the
effect, if any, that the court’s finding had upon the judgment ultimately
rendered”).  We overrule Mother’s eighth issue.

VII.  Conclusion

          Having
overruled Mother’s dispositive points, we affirm the trial court’s order
terminating Mother’s parental rights to K.C.R.T. and K.C.-J.T.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

GARDNER,
J. concurs without opinion.

 

DELIVERED:  August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]J.M. is not a party to
this appeal.





[3]Mother explained at the
hearing on her motion for new trial that she did not show up for trial because
she had accidentally overdosed the night before by taking ten sleeping pills,
hospitalizing her.





[4]Mother’s trial counsel was
present and participated in the trial.  Trial counsel stated that he could not
waive a jury trial without Mother’s consent.





[5]At trial, Mother’s
attorney questioned Williams about her knowledge of an incident in March 2009
in which Mother had passed out in a Wal-Mart when she had the children.





[6]Mother merely states in
her “Issues Presented” section, “The Trial Court’s finding that termination of
the parental rights of Appellant to the children, K.C.R.T. and K.C.-J.T. was in
the best interest of the children.”  But she does state at the conclusion of
her brief that the evidence is legally and factually insufficient to support
the trial court’s order.